**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
SUPREME COURT
STATE OF WASHINGTON
8/19/2021
BY ERIN L. LENNON
CLERK

# THE SUPREME COURT OF WASHINGTON

| | | |
|---|---|---|
| ROGER LEISHMAN, | ) | **ORDER DENYING FURTHER RECONSIDERATION** |
| Respondent, | ) | |
| | ) | No. 97734-8 |
| v. | ) | |
| OGDEN MURPHY WALLACE, PLLC and PATRICK PEARCE, | ) | |
| Petitioners. | ) | |

The Court considered "RESPONDENT ROGER LEISHMAN'S MOTION FOR RECONSIDERATION" and "PETITIONERS OGDEN MURPHY WALLACE, PLLC, & PATRICK PEARCE'S ANSWER TO MOTION FOR RECONSIDERATION". The Court entered an order amending the concurring opinion of Gordon McCloud, J., on August 19, 2021.

Now, therefore, it is hereby

ORDERED:

That further reconsideration is denied.

DATED at Olympia, Washington this 19th day of August, 2021.

For the Court

_González C.J._

CHIEF JUSTICE

FILED
SUPREME COURT
STATE OF WASHINGTON
8/19/2021
BY ERIN L. LENNON
CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROGER LEISHMAN, | No. 97734-8 |
| Respondent. | |
| v. | ORDER |
| | AMENDING |
| OGDEN MURPHY WALLACE, PLLC and PATRICK PEARCE, | OPINION |
| Petitioners. | |

It is hereby ordered that the concurring opinion of Gordon McCloud, J., filed January 28, 2021, in the above entitled case is redesignated a concurring in part and dissenting in part opinion and amended as indicated below.

Beginning on page 1, line 1 of the slip opinion, delete all material down to and including "respectfully concur." on page 2, line 14 and insert:

No. 97734-8

GORDON McCLOUD, J. (concurring in part and dissenting in part)—Roger Leishman sued the law firm Ogden Murphy Wallace PLLC and lawyer Patrick Pearce, lead counsel on the investigation and report at issue here. Ogden Murphy and Pearce defended

on the ground that our state's anti-SLAPP[1] statute, RCW 4.24.510, provided them with immunity from this lawsuit. Specifically, those defendants explain that—using the language of the anti-SLAPP statute—they are "person[s]" who are immune from "civil liability" that is "based upon" certain "communication[s]" to the "government." *Id.*

I agree with the majority's resolution of the issue about the meaning of "person." The anti-SLAPP statute shields "[a] person" who "communicates" certain information to the "government" from civil liability for certain claims. *Id*. The only exception that we have carved out of the otherwise expansive meaning of "person" is a "government agency." *Segaline v. Dep't of Labor & Indus.*, 169 Wn.2d 467, 472-75, 238 P.3d 1107 (2010) (lead opinion), 479 (Madsen, J., concurring).

The defendants in this case do not fit within that exception. They are definitely not government agencies. Even the complaint admits this. Clerk's Papers at 2 ("At all times relevant herein, neither Ogden Murphy nor Pearce was an officer, agent, employee, agency, or department of the State of Washington."). The conclusion is therefore inescapable: each of the government contractors in this case was a "person" within the meaning of the anti-SLAPP statute.

But that doesn't mean that all government contractors necessarily fall within the anti-SLAPP statute's definition of "person." I therefore disagree with the lead opinion's conclusion that *all* "organization[s] or individual[s] [who] communicate[] under a contract with a government entity," lead opinion at 2, constitute such "person[s]." Instead, based on the facts of a particular case, a contractor might be considered an "agent" of the government itself. But not here.

I also part company with the lead opinion's conclusion about whether the statute immunizes these defendants from all of Leishman's claims or only some of them.

The lead opinion sets up the correct analytical framework: start with the plain language of the statute. The anti-SLAPP statute immunizes a speaker from liability for claims that are "based upon" certain communications to the government. The majority then gives the undefined prepositional phrase "based upon" a very broad meaning.

To be sure, the phrase "based upon," when undefined, is not completely clear. The lead opinion concludes that "'based upon' refers to the starting point or foundation of the claim and *includes conduct of the investigation leading to* the communication." Lead opinion at 16 (citing *Tham Thi Dang v. Ehredt*, 95 Wn. App. 670, 682-84, 977 P.2d 29 (1999) (emphasis added). Other decisions have similarly held that the phrase "based upon," as used in a particular writing, should be construed broadly. *E.g.*, *PennyMac Loan Servs., LLC v. Black Knight, Inc.*, No. 2:19-cv-09526-RGK-JEM, 2020 WL 5985492, at *5 (C.D. Cal. Feb. 13, 2020) (court order). But some decisions have held that the same phrase, used in a different writing, should be construed more narrowly. *E.g., Saudi Arabia v. Nelson*, 507 U.S. 349, 356-57, 113 S. Ct. 1471, 123 L. Ed. 2d 47 (1993).

The common point of agreement is that the phrase, when undefined, is not completely clear about its scope. So context matters.

The context of this case is a statute that provides immunity from liability. "Statutory grants of immunity in derogation of the common law are strictly construed." Dissent at 4. Thus, in this context, I think we must choose the narrower meaning.

I would therefore remand to the trial court to sort out which claims are directly "based upon" the challenged communication to the government and which are based on

---

[1] SLAPP stands for strategic lawsuit against public participation.

*Leishman v. Ogden Murphy Wallace, PLLC*, No. 97734-8 (order amending opinion)

something other than the communication itself. In my opinion, the claims "based upon" the conduct of the investigation—exclusive of the communication—survive this anti-SLAPP challenge.

I therefore respectfully concur in part and dissent in part.

DATED this __19th__ day of August, 2021.

_____
Chief Justice

APPROVED:

_____
Gordon McCloud, J.

3

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JANUARY 28, 2021

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JANUARY 28, 2021

*Susan L. Carlson*

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ROGER LEISHMAN, | ) | No. 97734-8 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | EN BANC |
| | ) | |
| OGDEN MURPHY WALLACE, | ) | |
| PLLC and PATRICK PEARCE, | ) | |
| | ) | Filed: January 28, 2021 |
| Petitioners. | ) | |
| _____ | ) | |

MONTOYA-LEWIS, J.—The Washington State Legislature created civil immunity for persons who communicate information to the government. Washington passed its anti-SLAPP statute,[1] RCW 4.24.510, in 1989 in order to protect individuals from retaliatory lawsuits that could deter them from making vital reports to the appropriate governmental body. RCW 4.24.500. RCW 4.24.510 provides immunity to a "person" who communicates a complaint or information to

---

[1] The term "SLAPP" stands for strategic lawsuit against public participation and was coined by George W. Pring and Penelope Canan in the 1980s and 1990s. *See* GEORGE W. PRING & PENELOPE CANAN, SLAPPs: GETTING SUED FOR SPEAKING OUT (1996); George W. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 PACE ENVTL. L. REV. 3 (1989).

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

a federal, state, or local agency regarding a matter of reasonable concern to that agency. This immunity applies to civil claims based on that communication. RCW 4.24.510.[2]

Only a "person" can take advantage of the immunity RCW 4.24.510 affords. In this case we must decide whether a government contractor hired to perform an independent investigation is a "person" under the statute. We hold that they are. Although immunities are generally construed narrowly, RCW 4.24.510's immunity unambiguously applies to organizations and individuals, and there is no language in the statute limiting its application when an organization or individual communicates under a contract with a government entity. When the plain meaning of the statute grants immunity to individuals and organizations regardless of the content or motive behind the communication, we cannot construe it to exclude an individual or an organization hired to speak to a government agency. Accordingly, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

Roger Leishman, an openly gay man, began employment with the Washington Attorney General's Office (AGO) in Bellingham as chief legal advisor to Western

---

[2] RCW 4.24.510 states:
A person who communicates a complaint or information to any branch or agency of federal, state, or local government, or to any self-regulatory organization that regulates persons involved in the securities or futures business and that has been delegated authority by a federal, state, or local government agency and is subject to oversight by the delegating agency, is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization.

2

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

Washington University in June 2015.[3] Shortly after commencing work at the AGO, Leishman began exhibiting serious trichotillomania, anxiety, and other symptoms, which he disclosed to his employer. In November 2015, Leishman's physician diagnosed him with posttraumatic stress disorder and codependency; Leishman informed the AGO about his new diagnoses as well. In a meeting in January 2016, Leishman learned he did not receive a $3,000 raise given to other assistant attorney generals due to complaints his supervisor made about his conduct at work. Leishman contends that his supervisor based her complaints on homophobic beliefs. In February 2016, Leishman submitted a formal request for reasonable accommodation of his disability, which the AGO subsequently denied.

In March 2016, Leishman drafted a discrimination complaint alleging that his supervisor made homophobic statements toward him. In accordance with AGO policy, Leishman and his supervisor met to discuss his complaint. During this meeting, his supervisor denied wrongdoing in connection with her statements, accused Leishman of faking his disability, and refused to support his then-pending accommodation request. Leishman admits that during this meeting he became angry, restless, and agitated, and he raised his voice. Leishman formally submitted his

---

[3] The facts come from Leishman's complaint and are substantially the same as the facts recited in the Court of Appeals opinion. *Becker v. Cmty. Health Sys., Inc.*, 184 Wn.2d 252, 257-58, 359 P.3d 746 (2015) (when reviewing a motion to dismiss, we take facts alleged in the complaint as true).

3

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

discrimination complaint to the AGO. Leishman's supervisor complained to the AGO about Leishman's conduct during their meeting, and the AGO placed Leishman on home assignment, where he remained until his termination.

The AGO retained Ogden Murphy Wallace PLLC (OMW), to conduct an independent investigation into Leishman's discrimination complaint and his supervisor's allegation that Leishman was inappropriate during their meeting. Patrick Pearce, an OMW employee, headed the investigation. OMW did not inform Leishman that the scope of the investigation covered both his discrimination complaint and Leishman's workplace conduct; Leishman believed the investigation covered only his discrimination complaint. OMW drafted a report and concluded that "Leishman has not established support for his complaint of discrimination against him based on sexual orientation" and that "Leishman's conduct during the March 1 meeting violated expected standards of conduct for his position as reflected in his job description." Clerk's Papers at 214-15. The AGO terminated Leishman's employment effective June 1, 2016.

After his termination, Leishman brought a lawsuit against the AGO. The parties reached a settlement agreement, and Leishman released his claims against the State and any officers, agents, employees, agencies, or departments of the State of Washington. Leishman subsequently sued OMW and Pearce for negligence, violation of the Consumer Protection Act, ch. 19.86 RCW; negligent

4

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

misrepresentation; fraud; and discrimination. In Leishman's complaint, he alleged that neither Pearce nor OMW was acting as the AGO's agent, and, therefore, his claims against OMW and Pearce are not barred by the settlement.

OMW filed a motion for judgment on the pleadings, under CR 12(c), arguing that OMW and Pearce had immunity under RCW 4.24.510. The trial court granted OMW's motion, and Leishman appealed. The Court of Appeals reversed, holding that "government contractors, when communicating to a government agency under the scope of their contract, are not 'persons' entitled to protection under RCW 4.24.510." *Leishman v. Ogden Murphy Wallace PLLC*, 10 Wn. App. 2d 826, 836, 451 P.3d 1101 (2019). OMW sought this court's review. We granted review and now reverse.

## II. ANALYSIS

Growing litigation beginning in the 1970s targeted "non-governmental individuals and groups for having communicated their views to a government body or official on an issue of some public interest." George W. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 PACE ENVTL. L. REV. 3, 4 (1989). These lawsuits, known as SLAPPs or SLAPP suits, "send a clear message: that there is a 'price' for speaking out politically." *Id.* at 6. Many states responded to the increase in these suits by creating statutory remedies aimed at defeating SLAPPs quickly. Michael Eric Johnston, *A Better SLAPP Trap: Washington State's Enhanced*

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

*Statutory Protection for Targets of "Strategic Lawsuits Against Public Participation*," 38 GONZ. L. REV. 263, 275 (2002). Known as anti-SLAPP statutes, the protections that states provide vary widely and depend on the specific statutory language that the legislature included. *Id.* at 276-80.

In 1989, Washington passed RCW 4.24.510—Washington's anti-SLAPP statute—and provided immunity to a "person" who communicates a complaint or information to a federal, state, or local agency for claims based on the communication regarding any matter reasonably of concern to that agency. To determine whether OMW and Pearce are immune from suit, we must address the scope of Washington's anti-SLAPP law specifically.

The question before this court is whether government contractors, who report information to a government agency under the scope of their contract, are "persons" under RCW 4.24.510. An individual is undisputedly a "person" under the statute. LAWS OF 2002, ch. 232, §§ 1, 2. We have also applied this immunity to organizations. *See Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 384, 46 P.3d 789 (2002) (holding that a community council organization is immune under the statute).[4] However, we have also held that government agencies are *not*

---

[4] *See also Tham Thi Dang v. Ehredt*, 95 Wn. App. 670, 686, 977 P.2d 29 (1999) (applying RCW 4.24.510 immunity to a bank); *Harris v. City of Seattle*, 302 F. Supp. 2d 1200, 1201 (W.D. Wash. 2004) (applying RCW 4.24.510 immunity to the firm hired by the city of Seattle to conduct an independent investigation of a hostile workplace allegation).

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

"persons" under the statute. *Segaline v. Dep't of Labor & Indus.*, 169 Wn.2d 467, 470, 238 P.3d 1107 (2010) (plurality opinion). The issue here is whether an organization and an individual—who would ordinarily have immunity under the statute—lose their immunity when they speak to the agency as a paid government contractor. We hold that OMW and Pearce are "persons" under RCW 4.24.510 because the plain language of the statute unambiguously encompasses individuals and organizations, regardless of whether they report information to a government agency under the scope of their contract.

We review a trial court's ruling on a motion to dismiss de novo. *Becker v. Cmty. Health Sys., Inc.*, 184 Wn.2d 252, 257, 359 P.2d 746 (2015). Factual allegations in the complaint are accepted as true, and if it appears beyond doubt that Leishman can prove no set of facts consistent with the complaint that would entitle him to relief, the motion to dismiss must be granted. *Id.* at 257-58. If OMW and Pearce are "persons" under RCW 4.24.510, then they are immune from Leishman's suit based on their communication to the AGO, and the case must be dismissed.

We start with the language of the statute itself to determine the meaning of "person." Statutory interpretation is a question of law we also review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). The goal of statutory interpretation "is to ascertain and carry out the legislature's intent." *Id.*

7

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

at 762. Where possible, we "'must give effect to [the] plain meaning [of a statute] as an expression of legislative intent.'" *Id.* (alterations in original) (quoting *Campbell & Gwinn*, 146 Wn.2d at 9-10). "[P]lain meaning is derived from the context of the entire act as well as any 'related statutes which disclose legislative intent about the provision in question.'" *Id.* (quoting *Campbell & Gwinn*, 146 Wn.2d at 11). If the plain language of the statute is unambiguous, our inquiry is over. *Id.* However, if the statute is subject to more than one reasonable interpretation, we "'may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent.'" *Id.* (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

The plain language of the statute makes clear that the legislature intended "person" to include nongovernment organizations. RCW 4.24.510 states that "[a] person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization." The plain meaning of the term "person" and the published intent of the act demonstrate that the statute unambiguously covers OMW and Pearce.

The term "person" is not defined within RCW 4.24.510. However, "person" is included in the general definitions under chapter 1.16 RCW. In RCW 1.16.080,

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

the legislature used the term "may" to suggest possible constructions of "person"—including an organization and an individual—rather than providing a definitive definition. RCW 1.16.080(1) ("The term 'person' may be construed to include . . . any public or private corporation or limited liability company, as well as an individual."); *Segaline*, 169 Wn.2d at 474.

While RCW 1.16.080(1)'s definition of "person" may be ambiguous in general, the plain language of RCW 4.24.510 unambiguously covers communication from individuals and organizations. In a 2002 amendment, the legislature published its intent regarding RCW 4.24.510:

> Strategic lawsuits against public participation, or SLAPP suits, involve communications made to influence a government action or outcome which results in a civil complaint or counterclaim filed against *individuals or organizations* on a substantive issue of some public interest or social significance. SLAPP suits are designed to intimidate the exercise of First Amendment rights and rights under Article I, section 5 of the Washington state Constitution.

LAWS OF 2002, ch. 232, §1 (emphasis added). The published intent of this amendment makes clear that SLAPP suits threaten the First Amendment and article I, section 5 rights of individuals and organizations. Thus, the immunity applies to individuals and organizations. This interpretation comports with our prior case law where we have held that an organization has immunity under the statute. *See Right-Price Recreation*, 146 Wn.2d at 384.

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

We must then ask if we should exclude an otherwise covered individual or organization from immunity because they are paid under a contract with the government. However, we "'must not add words where the legislature has chosen not to include them.'" *Porter v. Kirkendoll*, 194 Wn.2d 194, 212, 449 P.3d 627 (2019) (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). There is no language in the statute suggesting that a contract is relevant to whether an individual or organization is a "person." In fact, the same intent section of the 2002 amendment states that the change is meant to recognize that advocacy to government is protected "*regardless of content or motive*, so long as it is designed to have some effect on government decision making." LAWS OF 2002, ch. 232, §1 (emphasis added). Even if a contract motivated the individual or organization to communicate with the government agency, the legislature directs us either to disregard it entirely or give it no weight. Under the plain language of the statute, whether the communication is motivated by a contract is not relevant. The dissent argues that we should construe RCW 4.24.510 narrowly to apply only when it is necessary to remove the threat of litigation that would otherwise intimidate a person from exercising their constitutional rights to free speech and to petition the government for redress. U.S. CONST. amend. I; WASH. CONST. art. I, § 12. While the dissent is correct to note that we generally construe statutory immunities narrowly, *Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 600, 257 P.3d 532 (2011), when the

10

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

plain meaning is unambiguous, statutory construction is inappropriate. *Campbell & Gwinn*, 146 Wn.2d at 11-12 (citing *Cockle v. Dept. of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001); *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994)). The plain meaning of RCW 4.24.510 unambiguously includes organizations and individuals—regardless of whether they are paid under a contract with the government—as among the "persons" who are immune from suit. The legislature specifically insulated individuals and organizations from civil liability when they communicate information to the government. It then directed that the communication is protected regardless of content or motive. The legislature's intent is clear from the plain meaning of the statute, so we need not consider outside sources to interpret this unambiguous term. *Jametsky*, 179 Wn.2d at 762. Leishman's complaint must be dismissed under the immunity afforded to OMW and Pearce by RCW 4.24.510. OMW and Pearce, an organization and an individual, are "persons" under the statute.

Although legislative history is not necessary to interpret this unambiguous term, the history of Washington's anti-SLAPP statute is instructive on this point. The dissent correctly recognizes the legislature's concern about lawsuits being used to intimidate citizens from exercising their constitutional rights to free speech and to petition the government. But it overlooks how the legislature grappled to strike the right balance between protecting SLAPP targets from litigation intended to

11

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

intimidate and requiring them to litigate in order to prove that they deserve this protection. The history of RCW 4.24.510 demonstrates the dilemma of crafting an under- or overinclusive immunity and the legislature's ultimate conclusion that the immunity must be broad in order to be effectual.

Former RCW 4.24.510 (LAWS OF 1989, ch. 234, § 2) limited the immunity to claims based on good faith communications to the government. As originally passed, the statute did not provide an efficient remedy to those who were targets of SLAPP suits because the good faith requirement had to be resolved before the suit could be dismissed. The good faith requirement increased the need for factual inquiry and led to costly and protracted litigation, defeating the protection and immunity that the statute was meant to provide. Tom Wyrwich, *A Cure for a "Public Concern": Washington's New Anti-SLAPP Law*, 86 WASH. L. REV. 663, 669-70 (2011); *see, e.g.*, *Right-Price Recreation*, 146 Wn.2d at 374 (resolving the good faith issue more than three years after the suit was commenced); *Gilman v. MacDonald*, 74 Wn. App. 733, 875 P.2d 697 (1994) (same).

In 2002, the legislature eliminated the good faith requirement for the immunity but added statutory damages of $10,000 for a person prevailing on this defense, which may be denied if the court finds that the complaint or information was communicated in bad faith. LAWS OF 2002, ch. 232, §§ 1, 2. These changes broadened the protections of the immunity in order to make RCW 4.24.510 a more

12

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

effective remedy for a SLAPP target. *See* Johnston, *supra*, at 285-86. This amendment struck a delicate balance. The immunity applies to any person who communicates a complaint or information to the government—not only those good faith speakers genuinely exercising their right to free speech or to petition the government but also those who make their communications in bad faith. Those who make their communications in bad faith may not receive statutory damages, but they will be immune from the suit based on the communication. Thus, RCW 4.24.510 tolerates some degree of overinclusiveness: in order for the immunity to protect against the burden of litigation that would deter people from reporting information to the government, any person who communicates information reasonably of concern to the government must be immune to suit based on the communication.

We must refrain from adding words where the legislature has chosen not to include them. *Porter*, 194 Wn.2d at 211-12 (quoting *Rest. Dev., Inc.*, 150 Wn.2d at 682). The plain language of RCW 4.24.510 includes no limitation regarding the purpose of the communication, the published intent of the statute states that communications are protected "regardless of content or motive," and the legislative history demonstrates that the legislature deliberately removed the good faith requirement. The legislature could hardly have made it any clearer that this is an immunity with broad application. The dissent's contention that the immunity should not apply in this case because it does not resemble a "typical" SLAPP suit simply

13

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

does not square with the legislature's actions to broaden the scope of this immunity. Dissent at 7. If the legislature decides that this immunity should apply more narrowly to exclude individuals and organizations who communicate to the government for business purposes, the legislature has the power to amend the statute. It is not for this court to narrowly construe an unambiguously broad statute in order to make it comport with our vision of who anti-SLAPP statutes should protect.

The dissent analogizes government contractors to a government agency, which we held is not immune under RCW 4.24.510 in *Segaline*, 169 Wn.2d 467. But none of the rationales offered by the plurality or concurrence in *Segaline* apply here. In that case, the lead opinion concluded that a government agency is not a "person" under the statute because the "purpose of the statute is to protect the exercise of individuals' First Amendment rights under the United States Constitution and rights under article I, section 5 of the Washington State Constitution," and a "government agency does not have free speech rights." *Id.* at 473. The concurrence agreed that a government agency is not a "person" under the statute but reasoned that the purpose of "the immunity, as well as for the attorney fees, costs, and statutory damages, is to remove the threat and burden of civil litigation that would otherwise deter the speaker from communicating," and the "intimidation factor does not . . . affect government agencies in the way that it does private individuals and organizations." *Id.* at 482. The concurrence also compared RCW 4.24.510 to a Massachusetts anti-

14

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

SLAPP law, which the Massachusetts Supreme Court concluded was "limited to 'those defendants who petition the government on their own behalf.'" *Id.* at 482-83 (quoting *Kobrin v. Gastfriend*, 443 Mass. 327, 332, 821 N.E.2d 60 (2005)).

However, a nongovernmental organization or corporation undisputedly has free speech rights, as does an independent contractor working for the government. *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 339-41, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010); *see also Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 678-81, 116 S. Ct. 2342, 135 L. Ed. 2d 843 (1996). Further, the "intimidation factor" discussed by the concurrence could affect a nongovernmental organization paid to complete an independent investigation: the threat of civil liability for its reports could deter an outside organization from taking part in an investigation or from fully reporting information it uncovers that is of reasonable concern to the agency. Finally, Washington's anti-SLAPP statute is not limited to protecting claims based on the right to petition like the Massachusetts law at issue in *Kobrin*; RCW 4.24.510 protects both the right to petition *and* freedom of speech. *Compare* LAWS OF 2002, ch. 232, § 1 (referencing "First Amendment rights and rights under Article I, section 5 of the Washington state Constitution"), *with* MASS. GEN. LAWS ch. 231, § 59H (referencing the "right to petition under the constitution of the United States or of the commonwealth"). The features of government agencies that the *Segaline* plurality and concurrence found dispositive do not extend to nongovernmental

15

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

organizations or individuals who communicate with the government pursuant to contracts. As we have stated, RCW 4.24.510 does not permit us to inquire whether a person's motive in communicating to the government is to conduct business or to exercise their constitutional rights. Dissent at 7. The fact that individuals and organizations have these constitutional rights distinguishes them from a government agency for purposes of this broad immunity.[5] Finally, Leishman argues that his claims are not "based upon" OMW or Pearce's communication to the government but, instead, address the manner in which they handled the investigation. However, "based upon" refers to the starting point or foundation of the claim and includes conduct of the investigation leading to the communication. *Tham Thi Dang v. Ehredt*, 95 Wn. App. 670, 682-84, 977 P.2d 29 (1999). Leishman's claims regarding OMW's conduct during the investigation are the starting point or foundation of the communication to the government agency, and his damages all stem from that final

---

[5] The dissent argues that OMW was not speaking for itself; that by virtue of its contract with the AGO, OMW was not speaking *to* the government through a true independent investigation but, instead, was speaking *for* the government. Dissent at 6. However, Leishman concedes that OMW and Pearce are not agents of the government, and Leishman has released all claims against the State's agents. Unless Leishman alleges that OMW or Pearce's conduct changes their *legal status*, OMW and Pearce—as an organization and an individual—are "persons" under the statute. Without alleging a change in status, all we are asked to do is look at the motive behind the communication, which the statute does not permit. Whether an agency relationship would eliminate immunity is a question for another day.

16

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

communication. Thus, his complaint is "based upon" OMW and Pearce's report, or communication, to the agency

We hold that a government contractor is covered by the immunity provided in RCW 4.24.510 because the plain language of the term "person" unambiguously includes individuals and organizations, regardless of their contracts with government. We reverse the Court of Appeals and reinstate the trial court's grant of judgment on the pleadings.

OMW and Pearce request reasonable attorney fees and costs, which they are entitled to. RCW 4.24.510 ("A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars."); RAP 18.1(a).[6]

## III. CONCLUSION

We hold that a government contractor hired to speak to a government agency is a "person" under the statute. RCW 4.24.510's immunity unambiguously applies to organizations and individuals, and there is no language in the statute limiting its application when an organization or individual communicates under a contract with a government entity. We reverse the Court of Appeals and find that OMW and

---

[6] OMW and Pearce do not request an award of statutory damages. Thus, we do not address that matter.

17

*Leishman v. Ogden Murphy Wallace, PLLC*
No. 97734-8

Pearce are entitled to a reinstatement of the trial court's grant of reasonable attorney fees and costs, as well as attorney fees and costs for their appeal. This case is remanded to the trial court for further proceedings in accordance with this opinion.

_____
Montoya-Lewis, J.

WE CONCUR:

_____                    _____

_____                    _____
Johnson, J.

_____                    _____
Owens, J.                                                              Yu, J.

_____                    _____

*Leishman v. Ogden Murphy Wallace, PLLC*, No. 97734-8

No. 97734-8

GORDON McCLOUD, J. (concurring)—Roger Leishman filed a complaint alleging that neither defendant was acting as an agent of the Attorney General's Office when they committed their allegedly tortious acts.

That allegation was soundly based on the facts: the defendants were the law firm Ogden Murphy Wallace PLLC and its lead lawyer on this case, Patrick Pearce; the law firm and the lawyer were hired as outside counsel to conduct an independent internal investigation; and they performed that job as attorneys should by doing their own background investigation and interviews and coming to their own independent conclusions.

When outside counsel perform such an internal investigation for the client, they do not become the client. They remain outside counsel. Their conclusions and advice rendered as a result of a thorough, ethical, internal investigation is a report that speaks to the client, not for the client.

1

*Leishman v. Ogden Murphy Wallace, PLLC*, No. 97734-8
(Gordon McCloud, J., concurring)

For that reason, I agree with the majority that each of the government contractors in this case was a "person" under the anti-SLAPP[1] statute, RCW 4.24.510. But I do not think that all government contractors are. Specifically, I do not agree that all "organization[s] or individual[s] [who] communicate[] under a contract with a government entity," majority at 2, fit within the definition of a person. It is only the ones who are not acting as agents of the government.

According to the facts alleged in the complaint, these defendant lawyers were not acting as agents of the government. Instead, they were acting as outside counsel, conducting their own independent outside investigation and providing their own professional legal conclusions. Lawyers who are hired to do such legal work and provide such advice to the client do not become agents of that client for all purposes. Specifically, in this case, they did not become agents of the government for purposes of the SLAPP statute.

I therefore respectfully concur.

_____
Gordon McCloud, J.

---

[1] SLAPP stands for strategic lawsuit against public participation.

2

*Leishman v. Ogden Murphy Wallace PLLC*

No. 97734-8

MADSEN, J. (dissenting)—The majority is correct that the resolution of this case turns on the meaning of the term "person" in RCW 4.24.510.  Majority at 2, 7.  I disagree with the majority's decision to give a broad meaning to the term "person" and extend protection to a government contractor that is neither exercising its First Amendment rights nor petitioning the government for redress of grievances.

Precedent has established that immunities are to be narrowly construed.  This is particularly significant because giving a broad meaning to the anti-SLAPP[1] statute at issue has the potential to deprive citizens of their constitutional right to seek redress in court for injuries.

In my view, the legislature plainly did not intend for government contractors fulfilling their contractual obligations to be "persons" entitled to immunity for the purposes of Washington anti-SLAPP statutes.  I respectfully dissent.

---

[1] SLAPP refers to strategic lawsuits against public participation.

No. 97734-8
Madsen, J., dissenting

Discussion

This case arises from a lawsuit brought by Roger Leishman against Ogden Murphy Wallace (OMW). Leishman had worked for the Attorney General's Office (AGO) as the chief legal advisor for Western Washington University. He was fired from this position after OMW investigated a discrimination claim Leishman filed against his supervisor for allegedly homophobic comments, as well as Leishman's workplace behavior. Leishman later sued OMW based on its investigation, claiming, among other things, negligence, fraud, and discrimination. OMW successfully moved to dismiss the suit, arguing it was immune under Washington's anti-SLAPP statutes, chapter 4.24 RCW.

In bringing a civil action against OMW, Leishman was exercising his constitutional and common law rights. U.S. CONST. amend. I (protecting the right to petition the government by filing suit in a court of law). "The people have a right of access to courts; indeed, it is 'the bedrock foundation upon which rest all the people's rights and obligations.'" *Putman v. Wenatchee Valley Med. Ctr., PS*, 166 Wn.2d 974, 979, 216 P.3d 374 (2009) (quoting *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780, 819 P.2d 370 (1991)); *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387, 131 S. Ct. 2488, 180 L. Ed. 2d 408 (2011) ("'[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.'" (alteration in original) (quoting *Sure-Tan, Inc. v. Nat'l Labor Relations Bd.*, 467 U.S. 883, 896-97, 104 S. Ct. 2803, 81 L. Ed. 2d 732 (1984))).

2

No. 97734-8
Madsen, J., dissenting

Leishman's negligence, fraud, and misrepresentation claims are rooted in common law. *E.g.*, *Mathis v. Ammons*, 84 Wn. App. 411, 415-16, 928 P.2d 431 (1996) (listing the common law elements of negligence); *Sigman v. Stevens-Norton, Inc.*, 70 Wn.2d 915, 920, 425 P.2d 891 (1967) (quoting *Webster v. L. Romano Eng'r Corp.*, 178 Wash. 118, 120, 34 P.2d 428 (1934) (setting out the elements of common law fraud)); *Guarino v. Interactive Objects, Inc.*, 122 Wn. App. 95, 129-30, 86 P.3d 1175 (2004) (noting the elements of negligent misrepresentation). Our state constitution fiercely protects the rights of Washington citizens to bring claims such as these in state court. WASH. CONST. art. I, § 4; *Schroeder v. Weighall*, 179 Wn.2d 566, 573, 316 P.3d 482 (2014) ("[A]t least where a cause of action derives from the common law, the ability to pursue it is a privilege of state citizenship" under article I, § 12.).

OMW contends that it constitutes a "person" under RCW 4.24.510 and is therefore entitled to immunity from suit. We review questions of statutory interpretation de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our fundamental objective is to ascertain and carry out the legislature's intent, and if a statute's meaning is plain on its face, then we must give effect to that plain meaning. *Id*. at 9-10. Plain meaning is derived "from *all* that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Id*. at 11 (emphasis added). Meaning is gleaned not just from the "words alone but from 'all the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, [and] the general object to be accomplished.'" *Burns v. City of Seattle*, 161

3

No. 97734-8
Madsen, J., dissenting

Wn.2d 129, 146, 164 P.3d 475 (2007) (internal quotation marks omitted) (quoting *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994)).

Statutory grants of immunity in derogation of the common law are strictly construed. *Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 600, 257 P.3d 532 (2011) (citing *Plano v. City of Renton*, 103 Wn. App. 910, 911-12, 14 P.3d 871 (2000)). RCW 4.24.510 provides immunity to a "person" who communicates a complaint or information to a branch or agency of the federal, state, or local government from civil liability. Lawmakers enacted chapter 4.24 RCW to address civil lawsuits that were being used to intimidate citizens from exercising their First Amendment rights and rights under article I, section 5 of the Washington State Constitution. LAWS OF 2002, ch. 232, § 1; RCW 4.24.500, .510.

As originally enacted, the anti-SLAPP statutes did not mention constitutional rights such as petitioning state and local governments for redress. WASH. CONST. art. I, § 4 ("The right of petition and of the people peaceably to assemble for the common good shall never be abridged."); U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."); *see also* WASH. CONST. art. I, § 12 (protecting the privilege of Washington citizens to bring claims in state court).

In 2002, lawmakers amended RCW 4.24.510, stating

> Although Washington state adopted the first modern anti-SLAPP
> law in 1989, that law has, in practice, failed to set forth clear rules for early

4

No. 97734-8
Madsen, J., dissenting

> dismissal review. Since that time, the United States supreme court has made it clear that, as long as the petitioning is aimed at procuring favorable government action, result, product, or outcome, it is protected and the case should be dismissed. This bill amends Washington law to bring it in line with these court decisions which recognizes that the United States Constitution protects advocacy to government, regardless of content or motive, so long as it is designed to have some effect on government decision making.

LAWS OF 2002, ch. 232, § 1. The legislature also added the award of statutory damages, attorney fees and costs for defending against SLAPP suits. The reason for immunity as well as fees, costs, and statutory damages is to remove the threat and burden of civil litigation that would otherwise intimidate a speaker from communicating information. *Segaline v. Dep't of Labor & Indus.*, 169 Wn.2d 467, 482, 238 P.3d 1107 (2010) (citing RCW 4.24.500, .510; LAWS OF 2002, ch. 232, § 1).

RCW 4.24.510 does not contemplate the type of conduct OMW engaged in here. When the legislature amended the anti-SLAPP statutes in 2002, lawmakers expressly noted the type of petitioning they intended to protect: procuring favorable government action, result, product, or outcome. LAWS OF 2002, ch. 232, § 1. While this amendment appears to preclude consideration of the content or motive of "advocacy to government," petitioning must be "designed to have some effect on government decision making." *Id*. The information OMW transmitted to the AGO may have had some effect on decision making, but OMW's communication was not "designed" to have an effect on government. OMW had no interest in the outcome of its communication, whether it vindicated or indicted Mr. Leishman. It did not engage in "advocacy," rather it was fulfilling a contractual obligation to investigate and report, regardless of the outcome.

5

No. 97734-8
Madsen, J., dissenting

Nor did OMW petition for redress of grievances—advocacy protected by the First Amendment. U.S. CONST. amend. I (providing that Congress "shall make no law . . . abridging . . . the right . . . to petition the government for a redress of grievances"). Rather, the communication was sought and contracted *by* the government. Had the AGO conducted the investigation itself instead of outsourcing to a private entity, the agency would not have the benefit of immunity. In this instance, OMW was acting *as* the government and not in a personal capacity. Simply put, OMW did not exercise the right to petition sought to be protected by our anti-SLAPP statutes.

OMW's manner of communication, under a contract with the government, is also not what the legislature intended to protect. Where an interest group or individual communicating information is doing so voluntarily, a government contractor is required to communicate information or risk violating its contract. *See* Michael Eric Johnston, *A Better SLAPP Trap: Washington State's Enhanced Statutory Protection for Targets of "Strategic Lawsuits Against Public Participation*," 38 GONZ. L. REV. 263, 264 (2002) (noting the usual SLAPP suit is a private business entity suing a public interest group or individual making critical comments to the government about the entity).

As recognized in *Segaline*, the term "person" is ambiguous and its meaning varies within the RCW. 169 Wn.2d at 473. The definition may include government agencies, corporations, or only human beings. *Id.* Though *Segaline* was a plurality decision, both the lead opinion and my concurrence agreed in result that a government agency is not a person. *Id.* at 479 (Madsen J., concurring). Similarly, both opinions looked to the

6

No. 97734-8
Madsen, J., dissenting

*purpose* of RCW 4.24.510 when construing the term "person." *Id.* at 473 ("The purpose of [RCW 4.24.510] is to protect the exercise of individuals' First Amendment rights under the United States Constitution and rights under article I, section 5 of the Washington State Constitution."); *id.* at 482 ("The reason for [anti-SLAPP] immunity, as well as for the attorney fees, costs, and statutory damages, is to remove the threat and burden of civil litigation that would otherwise deter the speaker from communicating."). As in *Segaline*, we must also consider the purpose of Washington's anti-SLAPP statutes to determine whether an organization such as OMW, which is being paid under contract to the government to provide information, constitutes a person. Here, the contractor, OMW, was engaged in business, not in an exercise of its constitutional rights. Given its financial interest in its communication, a government contractor is highly motivated to communicate to the government and does not require that the threat of civil litigation be removed to do so. Indeed, the very fact of offering services for hire makes civil litigation a likely risk.

Similar to *Segaline*, the intimidation factor of retaliatory litigation does not affect government contractors as it does private individuals and organizations. *See id.* An organization hired by the government to conduct an investigation and report findings is operating pursuant to a contract. Some risk of litigation to contractors may exist, but the intimidation factor of that litigation is significantly less than in typical SLAPP suits and an unlikely deterrence. Moreover, as occurred here, the risk of litigation can be

7

No. 97734-8
Madsen, J., dissenting

addressed through the transactional contract and insurance. *See* Br. of Amicus Curiae

Am. Civil Liberties Union of Wash. at 14.

The majority incorrectly construes the plain language of RCW 4.24.510 in holding

that government contractors are persons. Majority at 7-13. Its interpretation improperly

relies on the rights of other entities—organizations and individuals. *Id*. at 9. We have

previously held that an organization is a person under the statute, *see Right-Price*

*Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 384, 46 P.3d 789

(2002), and an individual is plainly a person. But a government contractor is not

analogous to the organizations involved in *Right-Price*. In that case, two nonprofit

citizen groups opposed Right-Price's proposed residential subdivisions and after

members spoke against the development before the county council, Right-Price sued the

groups, the named officers, and their spouses, among others. *Id*. at 374-75. Here, OMW

was contracted by the AGO to collect and report information, unlike the nonprofit citizen

groups independently advocating against residential development in *Right-Price*.

The majority's reading also overlooks the language and purpose of RCW

4.24.510. As discussed above, OMW did not engage in the type of advocacy

contemplated by the anti-SLAPP statutes. As the nonprofits in *Right-Price* demonstrate,

advocacy to the government for redress of grievances is entitled to immunity.

Information contracted by and for the government, however, is not an exercise of rights

under the First Amendment and article I, section 5 of the Washington Constitution.

OMW was not engaged in advocacy nor did it seek redress of grievances.

8

No. 97734-8
Madsen, J., dissenting

Ultimately, OMW seeks immunity from tort liability. It is long settled that statutory grants of immunity in derogation of the common law are strictly construed. *Michaels*, 171 Wn.2d at 600. Neither OMW nor the majority offers a reason for departing from this established precedent under which OMW plainly fails to satisfy RCW 4.24.510. Instead, the majority misapplies our rules of statutory interpretation and erroneously broadens the definition of person. I disagree.

Instead, I would adhere to the strict rule of construction for grants of immunity in derogation of the common law and hold that a government contractor communicating the results of an investigation to a government agency does not constitute a person under RCW 4.24.510. Accordingly, OMW is not entitled to immunity. I respectfully dissent.

_____
Madsen, J.

_____
González, C.J.

_____
Stephens, J.

_____
Whitener, J.

9