# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ELDINA NOVALIC,<br><br>Appellant,<br><br>v.<br><br>PEACEHEALTH and THE DEPARTMENT OF LABOR AND INDUSTRIES.<br><br>Respondents. | No. 58451-4-II<br><br><br>ORDER GRANTING MOTION TO PUBLISH AND PUBLISHING OPINION |

Respondent, PeaceHealth, has moved to publish this court's opinion filed on July 16, 2024. After consideration, the court grants the motion. Accordingly, it is

**ORDERED** that the final paragraph in the opinion which reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted. It is further

**ORDERED** that the opinion will now be published.

**FOR THE COURT**

**PANEL**: Jj. MAXA, GLASGOW, PRICE

_____
PRICE, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| ELDINA NOVALIC, | No.  58451-4-II |
| Appellant, | |
| v. | |
| PEACEHEALTH AND THE DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondents. | |

PRICE, J. — Eldina Novalic was injured while working as a nurse for PeaceHealth Southwest Washington Medical Center (PeaceHealth).  She applied for workers' compensation benefits pursuant to the Industrial Insurance Act (IIA), Title 51 RCW.  As part of the administration of Novalic's claim, PeaceHealth requested that Novalic attend an independent medical examination (IME).  Because of the COVID-19 pandemic and related travel restrictions, PeaceHealth notified Novalic shortly before the examination that it would be conducted remotely by telehealth.  Novalic's counsel objected, and Novalic did not attend.

As a result of Novalic's failure to attend the exam, the Department of Labor and Industries (Department) suspended her benefits.  Both the Board of Industrial Insurance Appeals (BIIA) and the superior court affirmed the suspension of benefits.

Novalic appeals the superior court's order affirming the decision of the BIIA.  Novalic argues that the superior court erred because (1) she was given inadequate notice that the exam

would be by telehealth and (2) PeaceHealth violated the Department's telehealth policy when it shifted the exam to telehealth without her consent. Novalic also requests attorney fees.

We affirm.

FACTS

I. BACKGROUND

In 2019, Novalic injured her back while employed by PeaceHealth, a self-insured employer.[1] Novalic opened a claim with the Department and sought benefits under the IIA. The Department initially allowed the claim.

Some time later, one of Novalic's evaluating doctors believed that as a consequence of her back injury, Novalic was suffering from anxiety. As a result, CorVel Corporation (CorVel), the claims administrator handling Novalic's claim on behalf of PeaceHealth, scheduled an IME with a psychiatrist. Initially, the examination was scheduled for February 2020, but it was canceled before it could take place.

II. THE DEPARTMENT'S TEMPORARY TELEHEALTH POLICY

The next month, in response to the onset of the COVID-19 pandemic, the Department issued a new payment policy called the "Temporary Record Review & Telehealth Independent Medical Exams Policy."[2] Administrative Record (AR) at 18. One portion of the policy was

---

[1] Self-insured employers "pay directly to workers any disability and medical benefits." *Dep't of Lab. & Indus. v. Ortiz*, 194 Wn. App. 146, 152, 374 P.3d 258 (2016). The IIA defines a "self insurer" as an "employer . . . which has been authorized under [the IIA] to carry its own liability to its employees covered by this title." RCW 51.08.173.

[2] On the first page of the policy, immediately above the title, the document carries the description "Payment Policies for Healthcare Services Provided to Injured Workers and Crime Victims." AR at 18.

entitled "Payment [P]olicy: Temporary Telehealth IME and Record Review." AR at 20. In that portion, the policy explained that it was designed to limit the spread of COVID-19 while allowing IMEs to continue. The policy provided that the Department was temporarily "allowing the delivery of independent medical exams . . . via telehealth." AR at 20. The policy further instructed providers on how to conduct telehealth exams to be able to bill for them and how to bill and document telehealth exams.

However, the payment-related provisions also contained several clauses that purported to limit the provider's ability to conduct telehealth exams. For example, the policy stated that the provider was responsible for assessing "a worker's ability and willingness to participate in an exam via telehealth, as well as ensuring telehealth is the appropriate method of service delivery for safe and effective care." AR at 20. The policy also provided that the "claims manager, *worker*, representative, employer, or any other party to the claim[] must also agree a telehealth IME is appropriate." AR at 20 (emphasis added).

III. MAY EXAM NOTICES, NOVALIC'S RESPONSE, AND THE DEPARTMENT'S ORDER

On May 7, 2020, nearly two months after the issuance of the Department's telehealth policy, CorVel provided 14 days' advanced notice to Novalic's counsel that a psychiatrist would conduct an IME of Novalic. CorVel communicated the date, time, and that the location of the exam would be in Vancouver. The notice stated that Novalic's attendance of the examination was mandatory and advised that failure to attend the exam may result in the suspension of benefits.

On May 19, 2020, three days before the exam was scheduled to take place, Novalic was informed that the exam would be shifted from being in person to a telehealth appointment. Novalic was told that she had the option of attending the exam at the Vancouver office where staff could

assist Novalic in connecting with the psychiatrist on an office computer or she could attend the telehealth appointment using any smartphone, tablet, or computer.

The next day, Novalic's attorney objected and advised PeaceHealth that Novalic would not attend the IME because it was not going to be conducted in person. Novalic's attorney explained:

> The mental status examination, which is the most important part of the psychiatric evaluation, needs to be based on personal observations.

AR at 186. As a result of Novalic's refusal to attend, the exam was cancelled.

Several months later, Novalic's attorney sent a series of letters to the Department in response to correspondence from PeaceHealth. Novalic's attorney further explained his objection to using telehealth as a way to administer a mental status examination, claiming that

> [t]he use of teleconferencing produces substantial visual distortions, as evidenced by national video productions, such as witnessed on PBS NewsHour, broadcast[ed] nightly.

AR at 188. Novalic's attorney also argued that PeaceHealth did not provide Novalic with the required 14 days of notice that the exam would be held by telehealth. Novalic's attorney later claimed that the exam could not be conducted remotely because "[t]he appearance, body gestures and manner of speech are distorted by teleconferencing." AR at 189.

The Department rejected these arguments and issued an order on July 31, 2020, suspending Novalic's benefits based on her refusal to "submit to, and/or cooperate with a medical examination." AR at 219.

IV.  PROCEDURAL HISTORY

Novalic appealed the Department's order to the BIIA. Both Novalic and PeaceHealth filed cross motions for summary judgment. Novalic claimed that PeaceHealth did not have the authority

to require her to attend the exam by telehealth and, as a result, the Department did not have the authority to suspend her benefits. Novalic did not provide any declarations from medical experts supporting her position that in-person observations were necessary for psychiatric examinations.

PeaceHealth argued that the Department's order should be affirmed because Novalic failed to establish good cause for her failure to attend the exam. Unlike Novalic, PeaceHealth supported its motion for summary judgment with declarations from three licensed and board-certified psychiatrists. Dr. Jean Dalpe, the provider who was assigned to Novalic's examination, explained that the IME was converted to a telehealth exam due to COVID-19 travel restrictions. All three psychiatrists stated that they regularly used telehealth to conduct IMEs and in their regular practices due to the pandemic. They all opined that telehealth was an appropriate alternative to in-person exams for evaluating psychiatric conditions.

In a proposed decision and order, the industrial appeals judge (IAJ) rejected Novalic's argument that conducting an IME by telehealth was unauthorized and affirmed the suspension of her benefits. The IAJ concluded that PeaceHealth's notice satisfied WAC 296-14-410(3) and that Novalic failed to establish good cause for failing to attend the exam.

Novalic petitioned the BIIA for review. The BIIA rejected Novalic's petition and adopted the IAJ's proposed decision and order.

Novalic appealed to the superior court. Among her arguments, Novalic contended that PeaceHealth did not have the authority to schedule an IME by telehealth because it did not obtain Novalic's consent in violation of the Department's temporary telehealth policy. After a hearing, the superior court affirmed the BIIA's decision.

Novalic appeals.

ANALYSIS

I. STANDARD OF REVIEW

The IIA governs workers' compensation claims. *Smith v. Dep't of Lab. & Indus.*, 22 Wn. App. 2d 500, 506, 512 P.3d 566, *review denied*, 200 Wn.2d 1013 (2022). With these claims, the superior court "conducts a de novo review of the BIIA's decision but relies exclusively on the certified board record." *Watson v. Dep't of Lab. & Indus.*, 133 Wn. App. 903, 909, 138 P.3d 177 (2006). "The BIIA's findings and decision are prima facie correct and the worker challenging the BIIA's decision has the burden of proof." *Id.*

On appeal, we review the superior court's order. *Spohn v. Dep't of Lab. & Indus.*, 20 Wn. App. 2d 373, 378, 499 P.3d 989 (2021). Our review of appeals under the IIA is subject to the ordinary rules governing civil appeals, including those for summary judgment. RCW 51.52.140 ("Except as otherwise provided in this chapter, the practice in civil cases shall apply to appeals prescribed in this chapter."); *see, e.g.*, *Spohn*, 20 Wn. App. 2d at 378 (applying ordinary summary judgment rules to Department's appeal of superior court's summary judgment order). Thus, we review de novo an IIA appeal stemming from an order granting summary judgment. *Id.* at 378.

Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). When determining whether to grant summary judgment, we view all facts and inferences in the light most favorable to the nonmoving party. *Meyers*, 197 Wn.2d at 287.

Statutory interpretation is a question of law that we review de novo. *Lakeside Indus., Inc. v. Dep't of Revenue*, 1 Wn.3d 150, 155, 524 P.3d 639 (2023). The goal of statutory interpretation

is to carry out the legislature's intent. *Leishman v. Ogden Murphy Wallace, PLLC*, 196 Wn.2d 898, 904, 479 P.3d 688 (2021). We must give effect to the plain meaning of a statute as an expression of legislative intent where possible. *Id.* If the plain language of the statute is unambiguous, our inquiry is over. *Id.*

II. NOTICE

Novalic first argues that the superior court erred in affirming the Department's order because she was given inadequate notice that the exam would be by telehealth. According to Novalic, PeaceHealth's notice was inadequate because she was told about the shift to telehealth with only three days' notice, instead of the required 14 days. We disagree.

A notice of an examination must provide "at least 14 but no more than 60 days" of notice of the exam. WAC 296-14-410(3)(a). The notice is required to include three things—"the date, time[,] and location of the examination." WAC 296-14-410(3)(a). If the notice does not include these three things, the worker will not be considered noncooperative for failing to attend the examination. WAC 296-14-410(3)(a).

Here, the notice was provided to Novalic 14 days prior to the examination. The notice also included the date, time, and location of the examination. Novalic's argument presupposes that this was inadequate because it did not include a reference to telehealth. But under the plain language of WAC 296-14-410(3)(a), nothing requires specifying the method by which the examination is to be conducted.

And Novalic cites no authority that suggests that when an examination is shifted from in person to telehealth, a new notice must be issued—especially considering the method of the examination is not required to be in the notice. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d

7

122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

Because PeaceHealth's notice included all of the required information and was provided to Novalic more than 14 days in advance of the examination, we conclude Novalic's argument about the adequacy of the notice fails.

## III. THE DEPARTMENT'S AUTHORITY TO SUSPEND NOVALIC'S BENEFITS

Novalic next argues that the Department did not have the authority to suspend her benefits because PeaceHealth did not comply with the Department's temporary telehealth payment policy when it switched the exam to telehealth. We disagree.

When PeaceHealth issued its notice to Novalic, the IIA was silent about the use of telehealth. Former RCW 51.36.070 (2001). This subsequently changed when the legislature revised the IIA in 2020 to expressly permit examinations by telehealth. *See* LAWS OF 2020, ch. 213 § 3 (amending RCW 51.36.070 to permit telehealth examinations "if the department determines telemedicine is appropriate for the examination").

Prior to the effective date of this legislative amendment, the Department issued a temporary telehealth payment policy as a result of the onset of the COVID-19 pandemic. *See* LAWS OF 2020, ch. 213 § 3. The policy went into effect after Novalic's initially-scheduled February 2020 examination but before the rescheduled May 2020 examination. The policy said that examinations were allowed to be conducted by telehealth, but it also required the employer to obtain the worker's approval for a telehealth exam. The policy stated:

> The claims manager, worker, representative, employer, or any other party to the claim, must also agree a telehealth IME is appropriate.

AR at 20.

Here, Novalic contends that this temporary telehealth policy was the only authority for telehealth in effect at the time of her May 2020 examination. And because PeaceHealth did not, as required by this policy, obtain Novalic's consent to participate in the exam by telehealth, Novalic claims the suspension of her benefits was wrongful.

The Department responds that no provision of the IIA restricted the ability of employers to use telehealth. And although the language of the temporary telehealth policy appears in places to require worker consent for telehealth, when viewed in context, the Department contends the policy is about payment to providers. In addition, the Department asserts policies do not have the force of law, so the policy could not serve either to limit PeaceHealth's legal authority to schedule a telehealth IME or to provide Novalic with good cause to fail to attend her examination. We agree with the Department.

The language of the IIA during these events was broad; there were no limits on the use of telehealth by providers for IMEs. The Department and self-insured employers were allowed to require a worker to attend an exam at a place reasonably convenient for the worker to resolve any medical issue. Former RCW 51.32.110(1) (1997) (Any worker who is entitled to receive benefits under the IIA, "shall, if requested by the department or self-insurer, submit [themselves] for medical examination, . . . at a place reasonably convenient for the worker . . . ."); former RCW 51.36.070 (requiring the worker to submit to an examination whenever the Department or self-insurer "deems it necessary" to resolve any medical issue). Indeed, there is no language in former

RCW 51.32.110(1) and former RCW 51.36.070 that restricts a self-insured employer to only

scheduling in-person exams. Moreover, other than requiring that the location must be "reasonably

convenient for the worker," there is no indication that the legislature was concerned with the

modality of IMEs when it passed the statute. Former RCW 51.32.110(1); *see also* former RCW

51.36.070. We conclude that the plain language of these statutes is broad and unambiguous; there

was no statutory restriction on PeaceHealth's authority to require Novalic to attend an IME through

telehealth.[3]

---

[3] The dissent draws the opposite conclusion from this same language—that is, the absence of a reference to telehealth should be construed as a prohibition. The dissent also places importance on the 2020 amendments to RCW 51.36.070 that added references to telehealth, concluding "[t]he legislature would not have had to add this language if telehealth IME previously had been authorized." Dissent at 17.

But respectfully, the dissent asks too much of our legislature. Practically, there would have been no cause for the legislature to have inserted references to telehealth into the IIA in the past as, prior to the development of video-conferencing capabilities, it would seem unlikely that the practice would have been frequently considered—especially prior to the COVID-19 pandemic. But the disruption caused by the pandemic forced hasty innovations throughout society. *See In re Recall of Inslee*, 199 Wn.2d 416, 434, 508 P.3d 635 (2022) ("The COVID-19 pandemic is a disaster unlike any the citizens of Washington have seen before.").

In such cases, the better approach is to view the plain language of legislative enactments pragmatically. When the statutes show no indication that the legislature was concerned with regulating the method or manner of IMEs (beyond being convenient to the worker), equating an omission of a specific method of examination as the prohibition of that method is too narrow of a view.

Indeed, the dissent's position that if the statute had always allowed telehealth IMEs, the legislature would not have had to amend the IME statute, does not account for the fact that the 2020 legislation also required the Department to develop more robust regulations, policies, and procedures governing the use of telehealth IMEs. LAWS OF 2020, ch. 213 § 5 ("The department must adopt rules, policies, and processes governing the use of telemedicine for independent medical examinations under section 3 of this act."). Like many COVID-19-era developments, lawmakers appropriately required more careful consideration of processes as it became evident that maintaining public safety would require longer term changes to requirements for obtaining

The question then becomes whether the Department's temporary payment policy somehow affected PeaceHealth's authority to schedule an IME by telehealth. We think not. The policy clearly appeared to be intended to focus on payments to providers. In the policy, the Department explains that it is temporarily allowing exams by telehealth, how a provider must conduct telehealth exams to bill for them, and how the provider must bill and document telehealth exams. Given the policy's timing, it appears to have been designed to reassure providers that they would be paid for continuing to provide services through telehealth when wide-sweeping restrictions on in-person contact were being imposed in the early months of the COVID-19 pandemic. *See* AR at 20 ("This temporary telehealth policy helps limit the spread of the coronavirus (COVID-19) outbreak, while still allowing exams to occur."). Consequently, we conclude that the policy addressed a provider's ability to bill for telehealth IMEs; it was not a policy that created a new right for workers to refuse to attend an IME.

And, in any event, the Department does not have the authority to create a legal restriction simply by adopting a policy, and it is well established that Department policies do not have the force of law, unlike statutes and regulations. *Fiore v. PPG Indus., Inc.*, 169 Wn. App. 325, 335 n.3, 279 P.3d 972 ("An agency's administrative policies . . . hav[e] no force or effect as a law or regulation . . . ."), *review denied*, 175 Wn.2d 1027 (2012); *see also Carranza v. Dovex Fruit Co.*, 190 Wn.2d 612, 624-25, 416 P.3d 1205 (2018) ("[A]dministrative policies do not even have

---

governmental benefits or services. In this context, it makes sense for the legislature to add to the general statutory authority for IMEs an express reference to telehealth IMEs. Interpreting this legislative decision as being indicative of a prior ban on telehealth ignores those realities of the pandemic.

the force of regulations, and deference to such policies is inappropriate . . . .").  Against these general principles, Novalic cites no authority that the Department's telehealth policy was binding on PeaceHealth or, under these circumstances, prevented the Department from suspending her benefits.  Thus, the fact that Novalic did not consent to the examination by telehealth is not, by itself, a basis to reverse the superior court.  Accordingly, we hold that PeaceHealth had the authority to require Novalic to attend the telehealth IME based on the broad language of former RCW 51.32.110(1) and former RCW 51.36.070.

Because PeaceHealth had the authority to require Novalic to attend the telehealth IME, the only remaining question is whether the Department had the authority to suspend Novalic's benefits based on her refusal to attend the telehealth exam.  It did.

The Department may suspend benefits if the worker fails to attend an examination and it is considered "noncooperation."  WAC 296-14-410(1) (benefits may be reduced, suspended or denied when a worker (or worker's representative) is "noncooperative with the management of the claim"); WAC 296-14-410(2)(a)(i) (noncooperation includes "[n]ot attending or cooperating with medical examinations"); *see also* former RCW 51.32.110(2) ("If the worker refuses to submit to medical examination, . . . the department or the self-insurer upon approval by the department, with notice to the worker may suspend any further action on any claim . . . and reduce, suspend, or deny any compensation for such period[.]").

If the worker has "good cause" to not attend an examination, it is not considered noncooperation. *Andersen v. Dep't of Labor & Indus.*, 93 Wn. App. 60, 64, 967 P.2d 11 (1998). The worker has the burden of justifying their nonattendance with good cause. *Id.*; *see also* former RCW 51.32.110(2) (The Department "shall not . . . reduce, suspend, or deny any compensation if

a worker has good cause for refusing to submit to . . . any examination . . . ."). Whether a worker has good cause for refusing to submit to an examination is a mixed question of fact and law because the "ultimate determination of good cause is a legal conclusion, based on subsidiary findings by the trier of fact." *Romo v. Dep't of Labor & Indus.*, 92 Wn. App. 348, 357, 962 P.2d 844 (1998).

In *Romo*, Division Three recognized that the good cause determination should balance "the worker's individual circumstances and the Department's interests in requiring the examination." *Id.* at 357. It is relevant if the worker has good reason to suspect the Department's or self-insurer's motives for requesting another examination or "to doubt the fairness of the examination." *Id.* at 359. But an unsupported belief that the examinations are "redundant and unnecessary," is insufficient. *Id.* at 358.

Here, Novalic appeared to argue below that she had good cause to refuse her IME because of the inferiority of telehealth for mental health assessments. Novalic also argues that she had good cause to not attend because the Department did not have the authority to schedule the IME. These arguments are unpersuasive.

First, as for Novalic's argument that telehealth should not be used for mental health assessments, even construing the facts in the light most favorable to her, Novalic had no good reason to suspect PeaceHealth's motives, especially in those early months of the COVID-19 pandemic. Nor did she have any good reason to doubt the fairness of the examination. Instead, her reason for refusing to attend the telehealth exam appeared to be based on personal beliefs, unsupported by medical expert declarations, that somehow in-person observations were required.

Second, as for Novalic's contention that PeaceHealth had no authority to schedule a telehealth exam, we have rejected that contention above. But even if Novalic *suspected*

PeaceHealth had no authority to schedule an exam, mere suspicion about this authority would not have been good cause to fail to attend. *See Andersen,* 93 Wn. App. at 63. In *Andersen*, the worker claimed that she did not have to attend an IME because she asserted the Department did not have the authority to schedule it. *Id.* Division One rejected that claim, noting that it is not good cause to refuse to attend an IME based on an unsupported allegation of lack of authority. *Id.* at 63-65. The court reiterated that the worker has the burden of justifying a refusal to appear for an IME and that Andersen was attempting to reverse that burden by forcing the Department to establish the reasonableness of its decision to schedule an exam. *Id.* at 64. The court explained that requiring the Department to justify its authority on the mere complaint of a worker was both unsupported by case law and a practical impossibility. *Id.* Novalic's argument fails.

On this record, Novalic failed to meet her burden of establishing that her justification for refusing to attend the exam amounted to good cause. Thus, the Department had the authority to suspend her benefits. *See* former RCW 51.32.110(2); WAC 296-14-410.

IV. ATTORNEY FEES

Novalic argues that she is entitled to reasonable attorney fees under RCW 51.52.130(1) if she prevails on appeal. RCW 51.52.130(1) provides for reasonable attorney fees if, on appeal from a BIIA decision, the BIIA's "decision and order is reversed or modified and additional relief is granted to a worker . . . ." Because Novalic has not prevailed, she is not entitled to attorney fees.

No. 58451-4-II

## CONCLUSION

We affirm the superior court's order and hold that Novalic is not entitled to attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

I concur:

GLASGOW, J.

15

MAXA, P.J (dissenting) – PeaceHealth Southwest Washington Medical Center (PeaceHealth) did not have any authority to conduct a telehealth independent medical examination of Eldina Novalic in the absence of the Department of Labor and Industries' (DLI) Temporary Record Review & Telehealth Independent Medical Exams (IME) Policy. But now the majority says that PeaceHealth can ignore the requirements of that policy. Because PeaceHealth did not comply with DLI's telehealth policy when scheduling Novalic's telehealth IME, I would hold that DLI could not suspend Novalic's workers' compensation benefits for declining to attend that telehealth IME.

A.    AUTHORITY TO CONDUCT TELEHEALTH IMES

Before DLI issued its telehealth policy, there was no statutory or regulatory authority that would allow a self-insured employer to conduct telehealth IMEs. Former RCW 51.32.110(1) (1997) required workers' compensation claimants to submit to a "medical examination at a place reasonably convenient for the worker." That statute did not state that the "medical examination" could be conducted virtually rather than in person. And nothing in the Washington Administrative code authorized telehealth IMEs.

That changed when DLI issue its telehealth policy in 2020. For the first time, employers were authorized to conduct and be paid for telehealth IMEs. Significantly, DLI's telehealth policy only "*temporarily* allow[ed] the delivery of independent medical exams via telehealth." Administrative Record (AR) at 20 (emphasis added). This means that once the policy expired, employers no longer would have authority to conduct telehealth IMEs.

After Novalic declined to attend a telehealth IME on May 19, 2020, the legislature for the first time expressly authorized telehealth IMEs. Former RCW 51.36.070(1)(a) (2020) stated that

16

the workers' compensation claimant was required to submit to an examination by a physician. Effective January 1, 2021, the legislature added the following language to that statute: "The examination must be at a place reasonably convenient to the injured worker, *or alternatively utilize telemedicine if the department determines telemedicine is appropriate for the examination.*" Former RCW 51.36.070(1)(b) (emphasis added). The legislature would not have had to add this language if telehealth IME previously had been authorized.

In summary, until DLI issued its telehealth policy, PeaceHealth did not have the authority to conduct telehealth IMEs. PeaceHealth could schedule a telehealth IME for Novalic only under DLI's policy.

B.      COMPLIANCE WITH POLICY REQUIREMENTS

Because PeaceHealth had to rely on DLI's telehealth policy to schedule Novalic's telehealth IME, PeaceHealth necessarily was required to follow the requirements of the policy. Two requirements apply here.

First, the policy states, "Before the exam, the IME provider(s) is responsible for assessing the worker's ability and willingness to participate in an exam via telehealth." AR at 20. And the policy's plain language states that this assessment must occur *before* the IME, not *at* the IME as DLI suggests. It is undisputed that PeaceHealth did not conduct such an assessment. Therefore, PeaceHealth violated this requirement.

Second, the policy states, "The . . . worker . . . must also agree a telehealth IME is appropriate." AR at 20. It is undisputed that Novalic did not agree. Therefore, PeaceHealth violated this requirement.

Because PeaceHealth did not comply with the requirements of DLI's telehealth policy, it could not lawfully compel Novalic to attend a telehealth IME. This means that DLI could not suspend Novalic's workers' compensation benefits. Accordingly, I dissent.

_____
MAXA, P.J.