# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JANET LANE, | No. 57178-1-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| WASHINGTON STATE HEALTH CARE AUTHORITY, | |
| Respondent. | |

PRICE, J. — Janet Lane appeals the superior court's order that denied her petition for review of a final order of the Health Care Authority's (HCA) Board of Appeals. The HCA Board's order terminated her Medicaid benefits, required her to reapply to reestablish benefits, and denied her request to backdate her benefits.[1] Lane argues that the superior court erred by denying her motion to admit additional evidence. Lane also raises various challenges to the Board's final order. And Lane requests attorney fees.

The superior court did not abuse its discretion by denying Lane's motion to admit additional evidence. Further, there are no grounds for reversing the Board's final order. Accordingly, we affirm and deny Lane's request for attorney fees.

---

[1] The initial administrative action terminated Lane's food assistance benefits as well. However, it does not appear that Lane appealed the determination regarding her food assistance benefits, and she does not address her food assistance benefits in her brief.

FACTS

Medicaid is a program through which states receive federal funds to provide medical assistance to individuals needing assistance. States that participate in Medicaid must designate a state agency to administer the program. In Washington, the HCA is the state agency designated to administer Medicaid programs. The Department of Social and Health Services (DSHS) acts as the HCA's designee to make eligibility determinations for Medicaid programs. Although there are different types of Medicaid programs, Medicaid programs in Washington are collectively administered under Washington Apple Health (WAH).

Prior to January 2018, Lane received supplemental security income (SSI) from the Social Security Administration (SSA). She also received WAH benefits, specifically Qualified Medicare Beneficiary (QMB) Medicare Savings Program (MSP) and SSI categorically needy (CN) medical assistance.

On January 3, 2018, Lane called DSHS and requested that her Medicaid benefits be terminated because she was moving out of state. That same day, DSHS issued Lane notices stating that because Lane would no longer be considered a state resident, her benefits would end on January 31, 2018. Three months later, on April 5, 2018, Lane submitted a request for a hearing on the termination of her benefits.

DSHS representative, Leslie Patten, appeared at the administrative hearing. Patten submitted exhibits supporting DSHS's position that it had correctly terminated Lane's benefits per her request. The exhibits included Lane's request for a hearing, DSHS's case narrative, the termination letters, and records from Oregon related to Lane applying for and receiving benefits in Oregon.

Patten testified that DSHS terminated Lane's benefits because Lane, herself, requested termination because she was moving to Oregon. Patten also presented documents from Oregon demonstrating that Lane had applied for, and received, benefits in Oregon. Patten explained that if Lane had reestablished residency in Washington, Lane would have to reapply for benefits.

Patten testified that throughout the case, DSHS had encouraged Lane to reapply for benefits if she was a Washington resident. However, DSHS had obtained documents from Oregon that indicated that Lane continued to be a resident of Oregon, including a mailing address for Lane in Corvalis, Oregon, and confirmation that Lane was receiving benefits in Oregon since March. Patten explained that DSHS had no information on where Lane was living between January 3, when she requested termination of her Washington benefits, and March 8, when she applied for benefits in Oregon because Lane refused to provide information about her current residence. Patten explained that documents for the hearing had been sent to an address in Normandy Park, Washington. Patten believed the address was Lane's mother's address.

Lane also testified at the hearing and conceded that she had called DSHS on January 3 and requested that her benefits be cancelled. Lane explained, "I was trying to make a decision about what I was going to do so I thought I should just stop the Washington benefits, uh, because of that." Admin. Rec. Verbatim Rep. of Proc. (AR VRP) at 45.

Lane testified that starting in February, she was "part time in Washington and part time in Oregon." AR VRP at 46. When asked for further explanation, Lane stated that it was complicated and there was not a simple answer. Ultimately, Lane explained,

> Um, so, as the record shows I was applying for Oregon benefits in March because I was going to Oregon. And sometimes I came back to Washington to get medical

care.  And then I—I stopped the benefits [in Oregon] on June 30th because I went to come back to Washington.

AR VRP at 52.  On cross-examination, Lane stated she moved back to Washington in July.  She also stated she was "working on" having the SSA update her case to reflect her move back to Washington.

The hearing examiner issued an initial order ruling that Lane's benefits were correctly terminated, Lane's benefits could not be backdated, and Lane would have to reapply for Washington benefits if she wanted to receive benefits in Washington.  Lane filed a petition for review of the initial order.

On October 25, 2018, the HCA Board of Appeals issued a lengthy 18-page review decision and final order.  After reviewing the entire administrative record, the Board entered numerous findings of fact.  First, the Board made findings related to the termination of Lane's Washington benefits:

> 1.  [Lane]. . .previously received SSI CN WAH coverage, MSP WAH coverage, and federal SNAP food assistance benefits through the State of Washington.  She has been and is currently a recipient of SSI benefits from the federal Social Security Administration (SSA).
>
> 2.  On January 3, 2017, [Lane] contacted DSHS and asked that her benefits be closed as of January 31, 2018, because she was moving out of state.  She was not sure where she was going and she did not have a forwarding address, but she advised that she would use her Washington address for mailing until she left.
>
> 3.  In letters, dated January 3, 2018, DSHS notified [Lane] that her health care coverage, MSP, and food benefits would end on January 31, 2018, because she was not considered a resident of Washington and was thus not eligible for assistance.  Each of these termination letters was mailed to Ms. Lane . . . .

AR at 23 (footnotes omitted).  The Board also entered findings related to Lane's time in Oregon and application for Oregon benefits:

> 4.  The [Lane] started going to Oregon in February 2018.

4

5. On March 6 and March 8, 2018, [Lane] applied for food and QMB MSP benefits with Oregon, noting that she had recently moved to Oregon. [Lane] reported that she had recently moved from Washington and was living in Albany, Oregon.

6. On March 13, 2018, staff at Senior & Disability Services in Oregon contacted Washington DSHS to ask whether [Lane] had open benefits in Washington State. [Lane]'s new address was reported as . . . Corvalis, Oregon . . . .

7. On March 13, 2018, staff at Washington DSHS staff informed the Oregon staff via fax that [Lane]'s federal SNAP food assistance and medical assistance benefits in Washington had closed on January 31, 2018.

8. [Lane] received QMB MSP coverage in Oregon, effective April 1, 2018, as well as federal SNAP food assistance benefits in Oregon, effective March 1, 2018. [Lane] did not apply for CN medical assistance coverage (i.e., Oregon Supplemental Income Program Medical (OSIPM)) to which she may have been entitled as an SSI recipient in Oregon because she was concerned it could prevent her from having a "supplement," but she did change her address to Oregon with SSA for SSI purposes.

. . . .

12. In a letter, dated April 27, 2018, Jackie Hoyer of Senior & Disability Services in Oregon notified DSHS staff about [Lane]'s application and approval for benefits in Oregon. In answer to a question about whether [Lane] had reported moving from Oregon, Ms. Hoyer wrote "[n]o, there is no record of the consumer stating verbally or in writing that she has moved from her listed address of . . . Albany, OR . . . .

. . . .

16. On June 21, 2018, [Lane] contacted Oregon Department of Human Services again, stating that she should not have terminated her Oregon benefits. She was informed that she could not have Oregon benefits while living in Washington, but [Lane] clarified ". . . that she planned to move to WA, but . . . will have to stay in OR . . ." Since her benefits had not yet been terminated and [Lane] expressed an intent to stay in Oregon, an Oregon caseworker determined the benefits could be reopened. [Lane] confirmed that her Oregon address was accurate.

AR at 23-26 (some alterations in original) (footnotes omitted). The Board found that Lane did not have any contact with DSHS until she requested a hearing on the termination of her benefits in April 2018. Between April and June, Lane continued to receive benefits in Oregon. Then at the end of June, Lane requested that her food and medical benefits in Oregon be closed. The Board entered specific findings regarding her move back to Washington and her Washington residency:

19. On June 29, 2018, [Lane] again asked an Oregon caseworker about ending her medical benefits in Oregon and was again ". . . [a]dvised . . . that her best option is to wait until she actually moves and then call us to tell us she moved." Later that same day, [Lane] again submitted a withdrawal of benefits form, and her QMB benefits in Oregon were closed, effective June 30, 2018.

20. Sometime in July 2018, [Lane] moved back to Washington. The undersigned finds based on a preponderance of the evidence presented that [Lane] did not reside in Washington State between sometime in February 2018 and sometime in July 2018. As of the date of hearing, [Lane] had not yet reapplied for any benefits in Washington although the evidence suggests she did so after the hearing.

. . . .

22. [Patten] further argued that because [Lane] subsequently applied for and received medical benefits in Oregon between April 1, 2018, and June 30, 2018, and food assistance benefits in Oregon between March 1, 2018 and June 30, 2018, she was ineligible to receive comparable benefits in Washington during this same period of time. Ms. Patten also noted that although [Lane] receives SSI and is thus automatically entitled to CN WAH benefits in Washington, her address with SSA must [be] located in Washington in order for that to happen—that is, she must be a Washington resident in order to receive CN medical assistance benefits based on her status as an SSI recipient. [Lane] admitted at the hearing that she was "working on" contacting SSA to update her address from Oregon to Washington; she apparently successfully did so by August 3, 2018.

AR at 27-28 (some alterations in original) (footnotes omitted).

The Board concluded that DSHS correctly terminated Lane's benefits:

9. **Termination of Benefits**. WAC 182-518-0025(2)(a) states:

We send written notice to you at least five days before taking action to *terminate*, suspend or reduce your *medicaid* eligibility or authorization for a covered service if:

> (i) You *requested* the action . . .

Both [Lane]'s SSI CN and QMB MSP eligibility are "Medicaid" and thus this WAC provision applies to [Lane]'s case. Based on the facts of this case in which [Lane] explicitly asked DSHS on January 3, 2018, to discontinue her SSI CN and QMB MSP Medicaid eligibility after January 2018 because she was moving out of state, DSHS correctly terminated those benefits per WAC 182-518-0025(2)(a)(i) and promptly notified her of the termination.

AR at 33 (first alteration in original) (footnotes omitted).

The Board concluded that WAC 182-503-0505(3)(b) required a person to be a Washington resident to be eligible for WAH programs, including SSI CN and QMB MSP. The Board then concluded that Lane was not a Washington resident between February 2018 and July 2018:

11. **[Lane]'s Residency.** WAC 182-503-0520 states:

*(1) A resident is a person . . . who currently lives in Washington and:*

   *(a) Intends to reside here, including persons without a fixed address*; or

   (b) Entered the state looking for a job; or

   (c) Entered the state with a job commitment.

(2) A person does not need to live in the state for a specific period of time prior to meeting the requirements in subsection (1) of this section before being considered a resident.

. . . .

*(4) A resident applying for or receiving health care coverage can temporarily be out of state for more than one month without their health care coverage being denied or terminated, if the person:*

   *(a) Intends to return to the state once the purpose of his or her absence has been accomplished and provides adequate information of this intent after a request by the agency or its designee; and*

   *(b) Has not been determined eligible for medicaid or state-funded health care coverage in another state (other than coverage in another state for incidental or emergency health care).*

*(5) A person who enters Washington state only for health care is not a resident and is not eligible for any medical program. . . .*

. . . .

*(8) In a dispute between states, the state of residence is the state in which the person is physically located.*

[Lane] did not intend to reside in Washington State after January 31, 2018, as she specifically told DSHS staff on January 3, 2018. Additional evidence that [Lane] did not intend to reside in Washington from February through July 2018 include:

- Her move to Oregon in February or March 2018;
- The change of her address to an Oregon address for SSA purposes and receipt of Oregon benefits;

- Her March 2018 application for food and medical assistance benefits from Oregon;
- Her receipt of food and medical assistance benefits from Oregon from March 1, 2018, through June 30, 2018, and April 1, 2018, through June 30, 2018, respectively;
- Her communications with Oregon caseworkers that she intended to move back to Washington sometime after June 30, 2018;
- Her own testimony that she did not move back to Washington State until sometime in July 2018; and
- Her testimony at the hearing on July 23, 2018, that she had not yet changed her address to a Washinton address for SSA purposes.

There is no evidence in the hearing record that the Appellant entered Washington looking for a job or with a job commitment as requirement [sic] by WAC 182-503-0520(1)(b) and (c). [Lane] thus did not meet the definition of a resident set forth at WAC 182-503-0520(1), as required by WAC 182-503-0505[(]3)(b) to be eligible for WAH SSI CN and MSP coverage from February through July 2018, based on a preponderance of the evidence presented.

AR at 34-36 (footnotes omitted).

The Board rejected Lane's arguments that she should be considered a resident under WAC 182-503-0520(4) because Lane was not currently receiving benefits and had not presented any evidence on her intent to return to Washington state. Further, the Board concluded that Lane was not a resident because it appeared from the record that she primarily returned to Washington to receive medical care (WAC 182-503-0520(5)) and that if there was any dispute as to her residency, her address history showed she was physically located in Oregon (WAC 182-503-05201(8)).

Because Lane was not a Washington resident from February to July 2018, the Board concluded her benefits could not be back-dated to February 2018:

14. **Back-Dating WAH Benefits.** Given that [Lane] was not eligible for any WAH programs from February 2018 through July 2018 because she did not satisfy the necessary residency requirement, back-dating her WAH benefits to February 1, 2018, is not permitted. Further, WAH coverage in general ". . . starts on the first day of the month you applied for and we decided you are eligible to receive coverage . . ." This means that one must first apply for benefits before they may be

approved and, if WAC 182-503-0070(2) or (4) applies, possibly back-dated. [Lane] did not reapply for benefits prior to the hearing in this matter and any evidence about an application she may have submitted after that time is not part of the hearing record. Finally, the QMB program does not have a retroactive eligibility period; instead, benefits begin on the first day of the month following QMB eligibility determination. DSHS could not determine [Lane]'s eligibility for QMB until after receiving her completed application.

AR at 37 (some alterations in original) (footnotes omitted).

Finally, the Board concluded that Lane was required to reapply to receive Washington benefits:

15. **Reapplication.** As noted above, DSHS correctly terminated [Lane]'s WAH SSI CN and QMB MSP benefits, effective January 31, 2018, and she did not reapply for WAH benefits until sometime after July 23, 2018. An application is a condition precedent to determining eligibility and, if approved, receiving benefits. It was therefore necessary for [Lane] to reapply for benefits before DSHS could approve them.

AR at 37-38 (footnotes omitted).

At the end of its lengthy findings and conclusions, the Board affirmed the initial order and entered a final order:

1. The *Initial Order* is **affirmed**.

2. DSHS correctly terminated [Lane's] Supplemental Security Income (SSI) Categorically Needy (CN) and Qualified Medicare Beneficiary (QMB) Medicare Savings Program (MSP) Washington Apple Health (WAH) benefits, effective January 31, 2018.

3. [Lane] needed to be a Washington resident in order to receive SSI CN and QMB MSP WAH benefits from February 2018 through July 2018. [Lane] was not a resident of Washington State from February 2018 through July 2018. [Lane]'s WAH benefits could not be back-dated to February 1, 2018, because she was required to be a Washington resident from February 2018 through July 2018 and she was not.

4. [Lane] was required to reapply for WAH benefits.

AR at 38.

Lane filed a request for reconsideration, which was denied.

Lane filed a petition for review at the superior court. Lane also filed a motion to admit additional evidence. Lane primarily sought to admit various medical records showing that she received health care in Washington between February and July 2018. She also submitted records showing regular SSI deposits into her bank account. And she provided letters from the HCA related to the creation of the administrative record in the case.

On March 4, 2022, the superior court entered an order denying the motion to admit additional evidence and denying the petition for review. As to the motion to admit additional evidence, the superior court explained,

> Ms. Lane offers the proposed additional evidence to demonstrate that she traveled back and forth between Oregon and Washington at times during 2018; that she received medical care in Washington in 2018; and that she received SSI in 2018.
>
> The Court finds that the proposed additional evidence does not satisfy the requirements of RCW 34.05.562(1) for the Court to receive evidence in addition to that contained in the agency record for judicial review. First, the proposed additional evidence does not relate to the validity of the agency action at the time it was taken. Second, the proposed additional evidence is not needed to decide a disputed issue regarding any of the topics identified in RCW 34.05.562(1)(a), (b), or (c).

Clerk's Papers (CP) at 475.

The superior court, without making any independent findings of fact, concluded that there was no statutory basis for reversing the Board's final order and affirmed.

Lane appeals.

## ANALYSIS

Lane's appeal can be divided into two parts. First, she argues that the superior court erred by denying her motion to admit additional evidence. Second, she argues that the Board's final

order was invalid based on a number of statutory grounds, including that it was unconstitutional, arbitrary and capricious, an erroneous interpretation or application of the law, based on unlawful procedure, and unsupported by substantial evidence.

We affirm.

I. MOTION TO ADMIT ADDITIONAL EVIDENCE

Lane argues that her motion to admit evidence should have been granted because the additional evidence showed that she received medical care in Washington and received SSI in 2018; this evidence, she contends, was critical to her case.

RCW 34.05.562 governs when the superior court may take new evidence in addition to the administrative record:

(1) The court may receive evidence in addition to that contained in the agency record for judicial review, only if it relates to the validity of the agency action at the time it was taken and is needed to decide disputed issues regarding:

(a) Improper constitution as a decision-making body or grounds for disqualification of those taking the agency action;

(b) Unlawfulness of procedure or of decision-making process; or

(c) Material facts in rule making, brief adjudications, or other proceedings not required to be determined on the agency record.

We review the superior court's decision regarding supplementing the appellate record under RCW 34.05.562 for an abuse of discretion. *Ctr. for Biological Diversity v. Dep't of Fish & Wildlife*, 14 Wn. App. 2d 945, 964, 474 P.3d 1107 (2020).

Here, the superior court denied the motion because the additional evidence did not comply with the requirements of RCW 34.05.562(1)(a)-(c). Evidence related to whether Lane was physically in Washington, received medical care in Washington, and received SSI in 2018 does not relate to any of the issues mentioned in the rule. The evidence does not relate to the constitution

of the Board, grounds for disqualification of the Board, or any unlawful procedure or decision-making process. Further, this administrative action is not rule-making, brief adjudication, or some other proceeding that is not required to be determined on the agency record. Thus, because the evidence Lane presented does not meet the requirements of RCW 34.05.562(1)(a)-(c), the superior court did not abuse its discretion by denying Lane's motion to admit additional evidence.

## II. REVIEW OF BOARD'S FINAL ORDER

Our review of an agency decision is governed by the Administrative Procedure Act (APA).[2] RCW 34.05.570(3). When conducting judicial review under the APA, we review the agency's order based on the administrative record. *Pac. Coast Shredding, LLC v. Port of Vancouver*, 14 Wn. App. 2d 484, 501, 471 P.3d 934 (2020).

We can grant relief from an agency's order in an adjudicative proceeding based on one of the nine reasons listed in RCW 34.05.570(3):

> (a) The order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied;
>
> . . . .
>
> (c) The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure;
>
> (d) The agency has erroneously interpreted or applied the law;
>
> (e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;
>
> . . . .
>
> (i) The order is arbitrary or capricious.

---

[2] Ch. 34.05 RCW.

"The burden of demonstrating the invalidity of agency action is on the party asserting invalidity."
RCW 34.05.570(1)(a).

A. THE WACS ARE NOT UNCONSTITUTIONAL

First, Lane argues that the Board's final order is based on WACs that are unconstitutional.
We disagree because Lane has failed to demonstrate the WACs violate any constitutional right.

Under RCW 34.05.570(3)(a), we will grant relief from an agency order if the rule on which
the order is based is in violation of constitutional provisions.

Lane offers extensive argument regarding how, in her view, the WAC's residency
requirements violate federal *statutory and regulatory* provisions that she claims provide a right to
continuous Medicaid benefits for SSI recipients. Even assuming, without deciding, that federal
statutes did impose such a requirement, federal statutes do not create constitutional rights.[3]
Because Lane has failed to identify a constitutional provision or right that is violated by the WACs
relied on by the Board's order, she has failed to meet her burden to show she is entitled to relief
under RCW 34.05.570(3)(a).

B. THE BOARD'S FINAL ORDER IS NOT ARBITRARY AND CAPRICIOUS

Lane argues that the Board's final order was arbitrary and capricious. We disagree.

Under RCW 34.05.570(3)(i), we will grant relief from an agency order if the order is
arbitrary and capricious. "An agency decision is arbitrary or capricious if it is 'willful and

---

[3] We note that, in certain circumstances, statutes may create a property interest, the deprivation of
which may implicate procedural due process concerns. *See Durland v. San Juan County*,
182 Wn.2d 55, 71-72, 340 P.3d 191 (2014) ("Constitutionally protected property interests may be
created either through (1) contract, (2) common law, or (3) statutes and regulations."). However,
Lane presents no procedural due process argument, only her argument that the WACs are
unconstitutional because they violate federal statutes.

unreasoning action in disregard of facts and circumstances.' " *Aponte v. Dep't of Soc. & Health Servs.*, 92 Wn. App. 604, 621, 965 P.2d 626 (1998) (quoting *Wash. Waste Sys., Inc. v. Clark County*, 115 Wn.2d 74, 81, 794 P.2d 508 (1990)), *review denied*, 137 Wn.2d 1028 (1999). When there are multiple reasonable opinions, an agency action " 'is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.' " *Heinmiller v. Dep't of Health*, 127 Wn.2d 595, 609, 903 P.2d 433 (1995) (quoting *Pierce County Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 695, 658 P.2d 648 (1983)), *cert. denied,* 518 U.S. 1006 (1996).

Here, the Board considered the relevant WACs and made a reasoned decision applying those WACs to the established facts of this case. The Board amply explained its reasoning and its decisions in a lengthy, 18-page order. Even if reasonable minds could differ on whether Lane was entitled to benefits, Lane fails to show that the Board's order was arbitrary and capricious. Accordingly, Lane has failed to show that the Board's final order is invalid under RCW 34.05.570(3)(i).

C. THE BOARD DID NOT ERRONEOUSLY INTERPRET OR APPLY THE LAW

Lane argues that the Board erroneously interpreted and applied the law by concluding that Lane was not a Washington resident from February 2018 through July 2018.[4] We disagree.

---

[4] To the extent Lane argues that the Board misapplied federal law, this argument is misplaced. The DSHS and the HCA Board are Washington agencies tasked with applying Washington law and Lane has failed to provide authority requiring the Board to separately apply federal regulations to its determination. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Accordingly, we do not address Lane's proposed application of federal regulations.

Under RCW 34.05.570(3)(d), we may reverse an agency order if it is based on an error of law. We review errors of law de novo. *Southwick, Inc. v. State*, 191 Wn.2d 689, 695, 426 P.3d 693 (2018). "However, we give substantial weight to an agency's interpretation of the law it administers, especially when the issue falls within the agency's expertise." *Id.* at 696.

"We review questions of law de novo and interpret agency regulations as if they were statutes." *Schimmick Constr. Co. v. Dep't of Lab. & Indus.*, 12 Wn. App. 2d 770, 778, 460 P.3d 192 (2020). The goal of statutory interpretation is to carry out the legislature's intent. *Leishman v. Ogden Murphy Wallace, PLLC*, 196 Wn.2d 898, 904, 479 P.3d 688 (2021). We must give effect to the plain meaning of a statute as an expression of legislative intent where possible. *Id.* "A statute is ambiguous if there is more than one reasonable interpretation." *State v. Elwell*, 17 Wn. App. 2d 367, 370, 486 P.3d 152 (2021).

WAC 182-503-0505 establishes eligibility requirements for WAH programs, including being a resident of Washington state. WAC 182-503-0505(3)(b). WAC 182-503-0520 defines resident for the purposes of determining eligibility for WAH programs:

> (1) A resident is a person . . . who currently lives in Washington and:
>> (a) Intends to reside here, including persons without a fixed address; or
>> (b) Entered the state looking for a job; or
>> (c) Entered the state with a job commitment
>
> (2) A person does not need to live in the state for a specified period of time prior to meeting the requirements in subsection (1) of this section before being considered a resident.
>
> . . . .
>
> (4) A resident applying for or receiving health care coverage can temporarily be out of the state for more than one month without their health care coverage being denied or terminated, if the person:

(a) Intends to return to the state once the purpose of his or her absence has been accomplished and provides adequate information of this intent after a request by the agency or its designee; and

(b) Has not been determined eligible for medical or state-funded health care coverage in another state (other than coverage in another state for incidental or emergency health care).

(5) A person who enters Washington state only for health care is not a resident and is not eligible for any medical program. The only exception is for a person who moves from another state directly into an institution in Washington state. Residency rules for institutionalized persons are described in WAC 182-503-0525.

Lane argues that the Board erroneously interpreted the WACs because they are ambiguous "in Ms. Lane's situation." Br. of Appellant at 37. And she claims that the Board did not properly apply the plain language of the statutes "to determine Ms. Lane's residency status when she was physically located in two states." Br. of Appellant at 38. We disagree.

Here, the plain language of WAC 182-503-0505(3)(b) clearly imposes a residency requirement to be eligible for WAH programs. And WAC 182-503-0520 sets out in detail the definition of a resident for WAH eligibility purposes. Although WAC 182-503-0520(2) provides that a person does not need to live in Washington for a specified period of time, this provision does not create ambiguity in Lane's "situation." Under WAC 182-503-0520(1), (4), and (5), there are ample additional residency criteria to determine whether a person who is only in the State briefly is considered a resident. By *using* the plain language of these criteria in its decision, the Board did not erroneously interpret the law.

Further, the Board correctly *applied* the plain language of WAC 182-503-0520 to this case. Regardless of Lane's assertion that she was regularly traveling back and forth to Washington, WAC 182-503-0520 requires more than being "physically located" in the state to establish residency. There is no evidence in the record that Lane was in Washington *with the intent to reside*

*here* as required to establish residency under WAC 182-503-0520(1)(a). And there is no evidence that Lane was physically located in Washington looking for a job or with a job commitment as required to establish residency under WAC 182-503-0520(1)(b)-(c). Thus, the Board properly applied the WAC to determine that Lane was not a resident of Washington.

Further, as noted by the Board, all of the evidence presented at the hearing, including the evidence presented by Lane herself, established only that Lane was physically located in Washington to receive medical care. The plain language of WAC 182-503-0520(5) explicitly states that "[a] person who enters Washington state only for health care is not a resident and is not eligible for any medical program." Because Lane has established, at best, that she was regularly entering Washington state to obtain medical care, the Board properly applied WAC 182-503-0520(5) to determine that Lane was not a Washington resident.

Finally, the Board properly applied WAC 182-503-0520(4) and determined that it did not apply to Lane. The plain language of WAC 182-503-0520(4) allows a *resident applying for or receiving health care coverage* to be out of the state temporarily without interfering with their benefits. But the exception did not apply because Lane was not a resident and her benefits had been terminated at her request. And the plain language of WAC 182-503-0520(4)(b) excludes any person who has been determined eligible for Medicaid or state-funded health care coverage in another state—this exclusion would have applied to Lane because she had been approved for at least one Medicaid or state-funded health care program in Oregon (despite her contention that she did not receive the same programs or benefits in Oregon as she had in Washington). The Board properly applied WAC 182-503-0520(4) and determined that it did not apply to Lane.

17

Lane has failed to show that the Board erroneously interpreted or applied the law. Accordingly, she fails to establish that we should grant relief under RCW 34.05.570(3)(d).

D. THE BOARD DID NOT ENGAGE IN UNLAWFUL PROCEDURE OR DECISION-MAKING PROCESS OR FAIL TO FOLLOW PROCEDURES

Lane contends that the DSHS engaged in unlawful procedures by requiring her to reapply for SSI CN WAH benefits when no additional application is necessary if the recipient is receiving SSI.[5] Lane also argues that the DSHS failed to follow its own procedures for backdating WAH benefits. And Lane argues that the DSHS failed to follow its own procedures authorizing medical benefits in more than one state. We disagree.

RCW 34.05.570(3)(c) provides that we will grant relief if "[t]he agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure."

First, Lane contends she should not have been required to reapply for SSI CN WAH benefits because SSI recipients are automatically enrolled in SSI CN WAH. The HCA concedes that there is not a specific application process for SSI CN WAH coverage when a person receiving SSI has a Washington address listed as their address with the SSA—DSHS will then automatically enroll them in SSI CN WAH coverage. But Lane was still required to establish eligibility for enrollment in SSI CN WAH benefits, including residency requirements, which she failed to do. Because Lane had failed to meet the requirements for SSI CN WAH coverage, DSHS did not

---

[5] In her brief, Lane refers to HCA rather than DSHS. However, HCA is not the administrative agency that took the administrative actions or that is governed by the rules or procedures Lane cites in her arguments. Accordingly, we address Lane's arguments as directed to DSHS rather than HCA.

engage in an unlawful procedure by failing to provide SSI CN WAH coverage until Lane properly updated her address with SSA to reflect her eligibility for SSI CN WAH.

Second, Lane argues that DSHS failed to follow its own procedures for providing backdated WAH benefits. WAC 182-504-0005 provides for backdated WAH benefits in certain circumstances:

> (1) The medicaid agency approves a retroactive Washington apple health (WAH) certification period for the three months immediately before the month of application when an individual:
>
> > (a) Requests retroactive WAH on his or her application, within the certification period following the retroactive period, or before the determination of benefits and any appeal process is final;
> >
> > (b) Would have been eligible for WAH for any or all of the three months if he or she had applied during the retroactive period; and
> >
> > (c) The individual received covered medical services as described in WAC 182-501-0060 and 182-501-0065.

Putting aside the fact that Lane could not have requested retroactive WAH benefits "on . . . her application" under WAC 182-504-0005(1)(a) because she had not applied for benefits, for the reasons explained above, Lane was not a Washington resident prior to July 2018. Therefore, Lane was not eligible for WAH during the period of time she sought to have her benefits backdated as required by WAC 182-504-0005(1)(b). Accordingly, DSHS did not fail to follow its procedures by refusing to backdate Lane's WAH benefits.

Third, Lane argues that DSHS's eligibility manual provides that "when an eligible Medicaid recipient moves to WA and is receiving Medicaid in another state, the appropriate Medicaid program can be authorized for the same month." Br. of Appellant at 49. Even assuming, without deciding, that failure to follow a procedure in DSHS's eligibility manual would invalidate the Board's final order, Lane fails to establish that DSHS failed to follow this procedure. As

explained above, Lane did not move to Washington, rather she was, at best, coming to Washington regularly to receive medical care. Therefore, the procedure in the eligibility manual does not apply to her.

Lane has failed to establish that the Board's final order is invalid under RCW 34.05.570(3)(c).[6]

E. SUFFICIENCY OF FINDINGS OF FACT AND CONCLUSIONS OF LAW

Finally, Lane specifically identifies numerous findings of fact and conclusions of law in the Board's final order which she contends are erroneous.[7] We disagree.

We review findings of fact using the substantial evidence test to determine "whether the record contains 'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of that order.' " *Port of Seattle v. Pollution Control Hr'gs Bd.*, 151 Wn.2d 568, 588, 90 P.3d 659 (2004) (internal quotation marks omitted) (quoting *King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000)). We review conclusions of law de novo. *Raven v. Dep't of Soc. & Health Servs.*, 177 Wn.2d 804, 817, 306 P.3d 920 (2013).

Lane argues that findings of fact 3, 5, 8, 12, 16, 19, 20, and 22 are not supported by substantial evidence. Lane argues that findings 3, 5, 12, and 16 do not accurately reflect her

---

[6] To the extent that Lane argues that the HCA Board improperly applied these DSHS rules and policies when affirming DSHS's administrative action, this argument would also fail. For the reasons explained above, DSHS followed its rules and procedures. Accordingly, the Board also properly applied the rules and procedures in affirming DSHS's administrative actions.

[7] Lane also challenges numerous findings and conclusions in the initial order issued by the hearing examiner. However, we review the Board's final order, not the hearing examiner's initial order. Accordingly, we decline to address Lane's challenges to any findings of fact or conclusions of law in the hearing examiner's initial order.

addresses or the fact that she was living in two places at one time. However, from our review of the record, these findings accurately reflect the information contained in the testimony and documentary evidence and Lane did not provide any additional or contrary testimony about her addresses or living arrangements. Thus, these findings are supported by substantial evidence.

Lane challenges finding of fact 8 because it was based on the supplemental exhibit of case notes. She had objected to the exhibit because it had "very confusing conversations that she had with OR's benefit office that were not always accurate, as she was trying to decide what to do." Br. of Appellant at 65. Lane contends the exhibit should not have been considered and does not provide substantial evidence supporting the finding. However, Lane presents no argument or authority which would support excluding the exhibit, and the finding accurately reflects the information contained in the exhibit. Thus, finding of fact 8 is supported by substantial evidence in the administrative record.

Lane challenges finding of fact 19 because it noted that Oregon received a form to close her QMB and food benefits. This finding of fact accurately reflects the case notes from Oregon. It appears that Lane claims that the Board inferred something about OSIPM benefits, which she was not receiving, but the finding does not reference OSIPM benefits. Thus, this finding is supported by substantial evidence.

Lane challenges finding of fact 20 finding that Lane was not a resident of Washington between February 2018 and July 2018, arguing that her medical records show "she was in two states at once." Br. of Appellant at 67. As explained above, simply physically being in Washington state does not establish residency and the Board properly found that Lane was not a Washington resident. This finding is supported by substantial evidence.

Finally, Lane challenges finding of fact 22 regarding when she updated her SSA file to reflect her WA address by August 3. Lane claims this is inaccurate because she received food benefits in July. But receiving food benefits in July would still be *by* August 3, so there is no inaccuracy. Further, this does not affect the Board's finding that Lane did not reside in Washington until she moved back in July 2018. This finding is supported by substantial evidence.

Lane also challenges conclusions of law 9, 10, 11, 13, 14, and 15. All of these challenges are based on Lane's arguments that the Board misapplied the law regarding residency requirements and reapplication. As explained above, the Board properly interpreted and applied the law regarding residency, and DSHS properly followed procedures regarding reapplication.

Accordingly, Lane's challenges to the sufficiency of numerous findings of fact and conclusions of law all fail.

III. REQUEST FOR ATTORNEY FEES

Assuming that she will prevail in this appeal, Lane requests attorney fees under RAP 18.1 and RCW 4.84.350.[8] Setting aside the issue of whether Lane would ever be entitled to an award of attorney fees as a self-represented party,[9] she is not the prevailing party and, therefore, is not entitled to attorney fees under RCW 4.84.350.[10] We deny Lane's request for attorney fees.

---

[8] Lane also requests attorney fees under RCW 11.96A.150 (costs and attorney fees under the Trust and Estates Dispute Resolution Act, chapter 11.96A RCW) and the Civil Rights Attorney Fees Act of 1976, 18 U.S.C. § 1988, neither of which are applicable to this judicial review of an agency action.

[9] *See In re Marriage of Brown*, 159 Wn. App. 931, 938-39, 247 P.3d 466 (2011) (self-represented litigants are generally not entitled to an award of attorney fees).

[10] RCW 4.84.350 provides for an award of attorney fees to "a qualified party that prevails in a judicial review of an agency action."

CONCLUSION

The superior court did not abuse its discretion in denying the motion to admit additional evidence. And there are no grounds for reversing the Board's final order. Accordingly, we affirm and deny Lane's request for attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, C.J.

VELJACIC, J.