IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MICHELLE ZIMMERMAN,<br><br>         Appellant,<br><br>       v.<br><br>KING COUNTY, WASHINGTON and DOW CONSTANTINE in his official capacity as King County Executive, the CITY OF SEATTLE, a municipal corporation and BRUCE HARRELL in his official capacity as the Mayor of the City of Seattle, the department of PUBLIC HEALTH - SEATTLE & KING COUNTY and FAISAL KHAN in his official capacity as Director of Public Health - Seattle & King County, and DOES 1 through 100, inclusive,<br><br>         Respondents. | No. 87629-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Michelle Zimmerman was injected with the Janssen – Johnson & Johnson COVID-19 vaccine ("Janssen Vaccine" or "J&J Vaccine") on March 14, 2021, by the Department of Public Health – Seattle & King County (DPH).[1] After receiving the vaccine, she experienced adverse reactions. She then filed suit against King County,[2] the city of Seattle (City), and Mayor Bruce Harrell, alleging a variety of claims, including that they were negligent, failed to

---

[1] We refer to DPH and Faisal Khan in his official capacity as director of DPH collectively as DPH.

[2] We refer to King County, Washington, and Dow Constantine in his official capacity as King County Executive collectively as King County.

obtain her informed consent, made intentional and negligent misrepresentations and omissions, and failed to follow the accepted standard of care. She sought declaratory and injunctive relief as well as a writ of mandamus. King County moved to dismiss under CR 12(b)(6), asserting immunity under the "Public Readiness and Emergency Preparedness Act," 42 U.S.C. § 247d, et seq. (PREP Act). The City and Mayor Harrell also moved to dismiss under CR 12(b)(6), asserting they were improper parties to the suit, as King County fully administered DPH. The trial court granted both motions. We affirm the trial court's order granting King County's motion to dismiss all claims for loss, because the PREP Act provides immunity against such claims. We also conclude that Zimmerman has not established the elements for a writ of mandamus and, therefore, we affirm the dismissal of the petition for writ. Finally, we affirm the trial court's order to dismiss the City on all claims for the same reasons and, separately, affirm the dismissal of Mayor Harrell as a party because he was sued solely in his official capacity.

BACKGROUND[3]

Since January 1981, the City and King County have "operate[d] . . . a combined City and county health department . . . known as the [department of] 'Public Health—Seattle & King County.' " Seattle Municipal Code (SMC) § 3.30.010. In March 2021, DPH owned and operated the Kent ShoWare Center

---

[3] As this is an appeal of a motion to dismiss, the facts as alleged in Zimmerman's complaint are accepted as true. Rodriguez v. Loudeye Corp., 144 Wn. App. 709, 717, 189 P.3d 168 (2008) (citing Tenore v. AT & T Wireless Servs., 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998)) (at motion to dismiss stage, "[a]ll facts alleged in the plaintiff's complaint are presumed true").

vaccination clinic where Michelle Zimmerman received the Janssen Vaccine. Zimmerman alleges that "[w]ithin minutes of being injected," she experienced an acute anaphylactic reaction to the vaccine that caused her throat and tongue to swell and a shooting pain down her vaccinated left arm up through her neck to her left ear. She claims her left wrist dropped to the point where she could not move it. Zimmerman stayed at the clinic for observation and "was sent home after an hour."

After she returned home, the swelling took over three hours to subside. Further, "she experienced a racing heart and rapid breathing and became unresponsive," and she had a fever of 104.8 degrees, which lasted for nine more days. Her symptoms worsened, and by the end of April 2021, she had developed left-sided weakness, speech problems, and vestibular problems; experienced memory loss; lost consciousness; and lost her ability to walk or talk for periods of time. Zimmerman alleges that "[s]he has been fully disabled ever since."

On February 27, 2024, Zimmerman filed a "Complaint for Damages and Petition for Writ of Mandate [sic] Upon Affidavit" against King County, the City, and Mayor Harrell (collectively, "Defendants"). Her claims against all named Defendants are predicated solely on actions of DPH. Zimmerman alleges that DPH failed to comply with public health requirements when it allegedly failed to keep records, provide her with essential disclosures and safety information, warn her about possible dangers and side-effects, and report adverse events, including failing to timely report adverse events to the "Vaccine Adverse Events Reporting System" (VAERS), and by misrepresenting to her that it filed a VAERS

3

report regarding her adverse event. Zimmerman also alleges that DPH made four other material misrepresentations by telling her the following:

> (a) the [Janssen] Vaccine was approved (as opposed to authorized only for emergency use) by the FDA, (b) the [Janssen] Vaccine was safe and effective, (c) other vaccines were not accessible, and (d) she would not be allowed to continue teaching in person classes at Renton Prep unless she accepted the [Janssen] Vaccine by the end of March 2021.

(Emphasis omitted.) Zimmerman asserts that she would have refused the vaccine "[b]ut for the Health Care Providers' material misrepresentations, omissions, and failure to provide Ms. Zimmerman with the required information," and the vaccine "has caused a cascade of neurological reactions incapacitating her and destroying her career and ability to conduct normal life functions."

Based on those allegations, Zimmerman brought claims of negligence and gross negligence; intentional and negligent misrepresentations and omissions and concealment; failure to secure informed consent; and failure to comply with the standard of care. Zimmerman requested declaratory and injunctive relief, including a declaration that "Defendant's practices have violated, and will continue to violate, without limitation, substantive and procedural directives of the applicable statutory law" as well as a permanent injunction enjoining Defendants from further administering any COVID-19 vaccines . . . without acting in compliance with . . . all public health guidelines."

Zimmerman also sought orders that would require Defendants to provide certain information and to disgorge Defendants' "unjustly acquired revenue," and that would also impose a constructive trust upon Defendants. In addition, Zimmerman requested restitution, special damages, pre- and post-judgment

interest "as allowable," exemplary or punitive damages, attorneys' fees, litigation expenses, and other damages or "further relief" available under the law or "as equity and justice may require." Finally, Zimmerman petitioned for mandamus, seeking to compel Defendants to "complete and submit a true and accurate VAERS report with the [Department of Health and Human Services]" and "provide Petitioner and other persons similarly situated with the information and disclosures . . . mandated by the Secretary's Declaration, the CDC, FDA, and other mandatory public health guidelines."

King County moved to dismiss, asserting immunity from liability under the PREP Act. The City asserted that it and Mayor Harrell were improper parties to the lawsuit, as DPH is administered wholly by King County and Zimmerman alleged no personal actions by Mayor Harrell outside his official capacity. The superior court agreed with both King County and the City and separately granted both motions to dismiss. This appeal followed.

## DISCUSSION

We review a trial court's grant of a CR 12(b)(6) motion to dismiss de novo. Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). Dismissal of a complaint is justified only if the court, presuming all facts in the plaintiff's complaint are true, concludes that the plaintiff cannot prove " 'any set of facts which would justify recovery.' " Id. (quoting Tenore v. AT & T Wireless Servs., 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998)). The defense of PREP Act immunity also presents issues of statutory interpretation, which are "question[s] of law reviewed de novo." Jametsky v. Olsen, 179 Wn.2d 756, 761, 317 P.3d

5

1003 (2014). See, e.g., Leishman v. Ogden Murphy Wallace, PLLC, 196 Wn.2d 898, 906-07, 479 P.3d 688 (2021) (plain language of RCW 4.24.510, anti-SLAPP statute, unambiguously afforded immunity to organizations and individuals, so trial court properly dismissed claims as a matter of law).

I. PREP Act Immunity

Zimmerman challenges the trial court's conclusion that King County and the City are immune from her claims under 42 U.S.C. § 247d-6d(a)(1) of the PREP Act. We hold that King County and the City are immune from all of Zimmerman's claims that are "claims for loss" under the PREP Act, which excludes her petition for a writ of mandamus.

Enacted in 2005, the PREP Act authorizes the secretary of the Department of Health and Human Services (Secretary) to issue a declaration when the Secretary makes a "determination that a disease or other health condition or other threat to health constitutes a public health emergency." 42 U.S.C. § 247d-6d(b)(1). In the declaration, the Secretary "may specify[ ] the manufacture, testing, development, distribution, administration, or use" of "covered countermeasures." Id. A vaccine is a covered countermeasure. § 247d-6d(i)(1)(C).

When the Secretary has issued such a declaration, the statute confers immunity to "covered persons" as follows:

> Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.

6

§ 247d-6d(a)(1). This immunity "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with . . . dispensing, prescribing, administration, licensing, or use of such countermeasure." § 247d-6d(a)(2)(B). The PREP Act defines " 'loss' " as "any type of loss, including—(i) death; (ii) physical, mental, or emotional injury, illness, disability, or condition; (iii) fear of physical, mental, or emotional injury, illness, disability, or condition, including any need for medical monitoring; and (iv) loss of or damage to property, including business interruption loss." § 247d-6d(a)(2)(A).

"The Secretary 'controls the scope of immunity through the declaration and amendments, within the confines of the PREP Act.' " Saldana v. Glenhaven Healthcare LLC, 27 F.4th 679, 687 (9th Cir. 2022) (quoting Maglioli v. All. HC Holdings LLC, 16 F.4th 393, 401 (3d Cir. 2021)). The "sole exception" to the PREP Act's grant of immunity is a federal cause of action against a covered person whose "willful misconduct" causes "death or serious physical injury." § 247d-6d(d)(1). This exception does not apply to negligent or reckless conduct resulting in loss. § 247d-6d(c)(1)(B).

Effective February 4, 2020, the Secretary declared the COVID-19 pandemic to be a public health emergency and set out covered countermeasures under the PREP Act. See Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19

("Declaration"), 85 Fed. Reg. 15198 (Mar. 17, 2020).[4] As relevant here, the Secretary defined "Covered Countermeasures" as "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine used to treat, diagnose, cure, prevent, or mitigate COVID-19." Id. at 15202.

Here, the parties agree that DPH is a "covered person" and the Janssen Vaccine is a "covered countermeasure" within the meaning of § 247d-6d(a)(1). The parties' dispute concerns two different aspects of § 247d-6d(a)(1). First, Zimmerman asserts that DPH's actions do not arise out of the administration of a covered countermeasure because a countermeasure is covered only if it is administered in accordance with the conditions set by the Secretary in its Declaration. Second, Zimmerman asserts that her claims do not amount to "claims for loss" under § 247d-6d(a)(1).

As to Zimmerman's first contention, she argues that DPH lacks PREP Act immunity for its interactions with her because in administering the Janssen Vaccine to her, DPH failed to follow certain conditions specified by the Secretary regarding the use of the vaccine as a covered countermeasure. Zimmerman focuses on the

---

[4] The Declaration has been amended 12 times since it was first published on March 10, 2020, most recently in December 2024. See 12th Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 89 Fed. Reg. 99875 (Dec. 11, 2024). The relevant portions of the Declaration have not changed across the 12 amendments.

At the time Zimmerman received the Janssen Vaccine, the seventh amended version of the Declaration was in effect. See Seventh Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 14462, 14463 (Mar. 16, 2021) ("This amendment to the Declaration is effective as of March 11, 2021.") The parties have not included all amended versions in the record on appeal, but both primarily cite to the initial 2020 Declaration in their briefing to this court. Zimmerman's complaint cites to the initial 2020 Declaration. Because there is no substantive difference between the versions for the purposes of this analysis, and in light of how the parties have cited the Declaration, this opinion cites to the text of the initial 2020 Declaration. See Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID–19, 85 Fed. Reg. 15198, 15202 (Mar. 17, 2020).

modifying clause in § 247d-6d(a)(1): "a covered person shall be immune [from claims] . . . arising out of . . . administration . . . of a covered countermeasure . . . *if a declaration under subsection (b). . . has been issued with respect to such countermeasure*." (Emphasis added). More specifically, the PREP Act describes such a declaration as follows:

> [I]f the Secretary makes a determination that a disease or other health condition or other threat to health constitutes a public health emergency . . . the Secretary may make a declaration . . . *recommending, under conditions as the Secretary may specify* . . . the use of one or more covered countermeasures, and *stating that subsection (a) . . . is in effect with respect to the activities so recommended*.

§ 247d-6d(b)(1) (emphasis added).

Accordingly, Zimmerman argues that a covered countermeasure is afforded immunity under the PREP Act *only* if (1) the covered person administers the countermeasure in accordance with the conditions as the Secretary has specified in its declaration and (2) the Secretary has stated immunity under subsection (a) applies "to the activities so recommended." The Declaration here specifically afforded immunity to "[a]ctivities authorized in accordance with the public health and medical response of the Authority Having Jurisdiction." ." But, Zimmerman alleges, DPH failed to follow the public health guidance issued by "Authorities Having Jurisdiction," including the "Emergency Use Authorization" issued by the Center for Biologics Evaluation and Research and various U.S. Food and Drug Administration (FDA) fact sheets.[5] Zimmerman claims that

---

[5] Zimmerman frames her argument as a non-preempted parallel state claim for loss. After oral argument, Zimmerman filed a statement of additional authorities noting the recent decision in Hencely v. Fluor Corp., 608 U.S. ---, 146 S. Ct. 1086 (April 22, 2026), asserting that it addresses issues of federal preemption of state law and immunity from liability for federal contractors. But a preemption analysis is unnecessary here, as the issue is not preemption, but whether the federal

because compliance with this public health guidance is a condition the Secretary has specified in the Declaration, DPH is not immune under the PREP Act.

We disagree. Zimmerman's argument requires that we interpret PREP Act immunity to extend only to *proper* administration of a covered countermeasure. But no such modifier appears before the word "administration" in the immunity statute, and "[w]e cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language." State v. Delgado, 148 Wn.2d 723, 727, 63 P.3d 792 (2003).

Further, the PREP Act affords immunity to covered parties for claims "resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). Zimmerman's claims here all concern such administration. While their decisions are not controlling, other courts have provided helpful guidance on what constitutes "administration" of a covered countermeasure. For example, a Kansas court held that the PREP Act confers immunity against negligence claims based, even in part, on alleged failure to disclose "dangers associated with Covid vaccines," reasoning that "claims for withholding or misrepresenting information are properly characterized as claims for the alleged improper administration of a covered countermeasure. That is, they relate to how that covered countermeasure was administered and are thus covered under the Act." M.T. v. Walmart Stores, Inc., 63 Kan. App. 2d

---

statutory *immunity* applies to state law claims. See M.T. v. Walmart Stores, Inc., 63 Kan. App. 2d 401, 410, 417, 528 P.3d 1067 (2023), review denied (Aug. 25, 2023) ("Whether PREP Act immunity completely preempts state law negligence claims for the purposes of federal jurisdiction is different from [the] argument . . . that . . . state law negligence claims are *exempt* from the Act's immunity provision.") (emphasis in original).

401, 410, 417, 528 P.3d 1067 (2023), <u>review denied</u> (Aug. 25, 2023). Here, one of Zimmerman's claims is precisely the same as the claim in <u>M.T.</u>: that DPH failed to properly disclose information that, if provided, would have caused her to not get vaccinated.

PREP Act immunity allows for an "expansive causal relationship" between an injury and the administration of a covered countermeasure. <u>Maney v. Brown</u>, 91 F.4th 1296, 1300-01 (9th Cir. 2024) (holding PREP Act immunity applied to correctional facility's assignment of priority vaccination tiers to inmates as part of administering COVID-19 vaccinations). Injuries that are "inextricably intertwined with the use of a covered countermeasure" are subject to PREP immunity. <u>See Solomon v. St. Joseph Hosp.</u>, No. 20-CV-3213, 2021 WL 10313712 at *3 (E.D.N.Y. Sept. 29, 2021), <u>vacated and remanded on other grounds</u>, 62 F.4th 54 (2d Cir. 2023). For example, a federal court in New Mexico held that PREP Act immunity applied where a plaintiff received a COVID-19 vaccination and fell in the parking lot on her way to sit in her car because there were "no chairs to sit on for monitoring immediately following inoculation," reasoning that the "chain of events . . . cannot be divorced from the administration of a covered countermeasure." <u>Storment v. Walgreen, Co.</u>, No. 1:21-CV-00898 MIS/CG, 2022 WL 2966607 at *3 (D.N.M. July 27, 2022). Similarly, a federal court in California applied PREP Act immunity to a claim against Costco for "failing to have adequate safeguards when administering the [COVID-19] vaccine" because the injury was "causally connect[ed] . . . to the vaccine administration." <u>Tate v.</u>

Costco Wholesale Corp., No. 23-CV-01399-RFL, 2024 WL 4489443 at *2 (N.D. Cal. Oct. 2, 2024).

On the other hand, PREP Act immunity is not boundless and does not cover injuries that are only tenuously related to administration of a covered countermeasure. For example, a federal court in New York held there was no PREP Act immunity for a doctor where the plaintiff "developed severe pressure sores from remaining stationary for an extended period" while on a ventilator to treat COVID-19, reasoning, "While [the plaintiff] was indisputably being treated for COVID-19 with a [covered countermeasure] during the period that he acquired a pressure injury, the claims he has brought are not so inextricably intertwined with the use of a covered countermeasure so as to invoke PREP Act preemption at this stage." Solomon, 2021 WL 10313712 at *3. Similarly, another federal court did not extend PREP Act immunity to a nursing home's alleged failure to manage COVID-19 risks by, for example, failing to establish an infection prevention plan or provide its staff with personal protective equipment, because the claim did not arise out of use of covered countermeasures. See Testa v. Broomall Operating Co., L.P., 622 F. Supp. 3d 4 (E.D. Pa. 2022); see also Est. of Peterson v. Koelsch Senior Cmtys., LLC, No. CV 22-11-BLG-SPW, 2023 WL 2300650 (D. Mont. Mar. 1, 2023) (no PREP Act immunity for senior care facility where claims arose out of "failure to provide adequate care generally, not specific to COVID-19," even though alleged breaches occurred during COVID-19 outbreak, because the claims did not "implicate a covered countermeasure."). In

contrast, here, Zimmerman herself states her claims stem directly from the administration of the Janssen Vaccine, a covered countermeasure.

To read the statute as Zimmerman suggests would also diminish the PREP Act's intentionally "sweeping" and "broad" conferred immunity. See Saunders v. Big Blue Healthcare, Inc., 522 F. Supp. 3d 946, 955-56 (D. Kan. 2021). Indeed, the PREP Act contemplates exactly the types of harm from vaccine administration experienced by Zimmerman, and, accordingly, established the "Covered Countermeasure Process Fund" specifically to afford "adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure." 42 U.S.C. § 247d-6e(a). If Zimmerman's reading of the PREP Act is correct—that there is no immunity for covered persons who fail to perfectly administer a covered countermeasure—then the Covered Countermeasure Process Fund would be rendered largely superfluous. We reject Zimmerman's reading of the PREP Act and hold that PREP Act immunity applies to all of her "claims for loss."

## II. "Claims for Loss"

Immunity under § 247d-6d(a)(1) covers "claims for loss." The PREP Act defines "loss" as any type of loss, including—

> (i) death;
> (ii) physical, mental, or emotional injury, illness, disability, or condition;
> (iii) fear of physical, mental, or emotional injury, illness, disability, or condition, including any need for medical monitoring; and
> (iv) loss of or damage to property, including business interruption loss.

42 U.S.C. § 247d-6d(a)(2). King County[6] argues that it is immune because Zimmerman's claims are all within the plain language definition of "claims for loss" under the PREP Act. Zimmerman counters that in addition to her claims for damages, she sought injunctive relief through her mandamus petition, and such relief is not a "claim for loss." She further argues that her claims involve "individual liberty rights" and the "right to bodily integrity" under the 5th and 14th Amendments.

Zimmerman's complaint did not assert constitutional violations. Instead, it included claims for negligence, gross negligence, failure to obtain informed consent, intentional and negligent misrepresentation and omission, and failure to follow the accepted standard of care. Zimmerman nevertheless contends that she may raise these constitutional violations for the first time on appeal under RAP 2.5, which states that "a party may raise the following claimed errors for the first time in the appellate court: . . . (3) manifest error affecting a constitutional right." But Zimmerman's claim on appeal is that the trial court erred in dismissing her claims under CR 12(b)(6). In reviewing a CR 12(b)(6) dismissal, we review only the contents of the complaint as pleaded. See Deegan v. Windermere Real Est./Ctr.-Isle, Inc., 197 Wn. App. 875, 391 P.3d 582 (2017) (de novo review of 12(b)(6) motion is based "on the complaint and hypothetical facts," not hypothetical claims). Moreover, Zimmerman does not provide legal authority or engage with the applicable legal test to demonstrate why constitutional error is manifest. Accordingly, we do not consider Zimmerman's purported constitutional

---

[6] Pursuant to RAP 10.1(g), the City joined King County's argument with respect to PREP Act immunity, to the extent it shared responsibility for DPH administration, which it disputed.

claims that she raises for the first time on appeal.[7] See State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990) ("This court will not consider claims insufficiently argued by the parties.").

As for her other claims, Zimmerman's complaint asserts the injuries of permanent disability and career interruption. We agree with King County that claims related to these injuries constitute "claims for loss" under the plain statutory definition of "loss" as "any type of loss," including "disability" and "business interruption." 42 U.S.C. § 247d-6d(a)(2). See State v. Gray, 174 Wn.2d 920, 927, 280 P.3d 1110 (2012) ("If the statute is unambiguous after a review of the plain meaning, the court's inquiry is at an end.") Accordingly, the trial court correctly dismissed most of Zimmerman's claims based on PREP Act immunity, including her first through fourth claims for relief—specifically, negligence and gross negligence, intentional and negligent misrepresentations and omissions and concealment, failure to secure informed consent, and failure to comply with the standard of care.

However, to the extent Zimmerman's fifth claim for relief seeks relief in the form of an injunction or writ of mandamus on a basis different from a claim for loss, it is not a "claim for loss" and, therefore, is not precluded by PREP Act immunity. Zimmerman's petition asks the court to require DPH[8] to "submit a true and accurate VAERS report with [the Department of Health and Human

---

[7] Likewise, Zimmerman's contention that the dismissal impedes her right to access the courts also fails. The dismissal did not preclude Zimmerman from asserting her constitutional rights in court, as she had not asserted any constitutional claims in her complaint. See Sys. Amusement, Inc. v. State, 7 Wn. App. 516, 518, 500 P.2d 1253 (1972) (due process clause does not guarantee a cause of action, but is instead "a protection against arbitrary action by the state").

[8] In her petition, Zimmerman argues that DPH includes King County, the City, and DPH and Director Khan.

Services]" regarding her adverse reaction to the Janssen Vaccine and "provide Petitioner and other persons similarly situated with the information and disclosures . . . mandated by the Secretary's Declaration, the [Centers for Disease Control and Prevention], FDA, and other mandatory public health guidelines." Zimmerman asserts that DPH had a duty to file a VAERS report, that it has continued to misrepresent to her that it filed a VAERS report, and that not having an official VAERS report filed by DPH has caused her disability benefits to be withheld. Zimmerman also asserts that not being provided the appropriate disclosures "continues to cause her harm by withholding from her and her health care team authentic updated information . . . about the known risks and side effects of the [Janssen] Vaccine which is needed . . . for the diagnosis and treatment of her condition."

King County argues that Zimmerman's requests for injunctive relief and mandamus are "claims for loss" because the remedies she seeks are rooted in her disability claims, as she seeks the VAERS report to receive disability benefits and she seeks updated disclosures to assist in her disability treatment. We disagree. Losses are tangible harms for which compensation can be measured and are awarded to make the plaintiff whole. See Spokane Truck & Dray Co. v. Hoefer, 2 Wash. 45, 53, 25 P. 1072 (1891) ("[E]very actual loss, and some of which frequently border on the imaginary, are paid for under the rule of compensatory damages. The plaintiff is made entirely whole.") Injunctive relief is a form of equitable relief that seeks to compel action when there is no other adequate remedy at law, such as monetary damages for loss. See Kucera v.

16

Dep't of Transp., 140 Wn.2d 200, 210, 995 P.2d 63 (2000). The goal of injunctive relief is to "restrain present or threatened future wrongful acts" and prevent harm. Lewis Pac. Dairymen's Ass'n v. Turner, 50 Wn.2d 762, 776, 314 P.2d 625 (1957). Even if Zimmerman's request for a VAERS report is for the purpose of her seeking disability benefits, she is not seeking payment of such benefits from DPH, but rather, relief in the form of action by DPH. Accordingly, we hold that Zimmerman's petition for mandamus is not appropriately characterized as a "claim for loss" under the PREP Act, nor is Zimmerman precluded from seeking injunctive relief in the form of filing a VAERS report.

## III. Writ of Mandamus

"A party seeking a writ of mandamus must show that (1) the party subject to the writ has a clear duty to act; (2) the petitioner has no plain, speedy, and adequate remedy in the ordinary course of law; and (3) the petitioner is beneficially interested." Seattle Times Co. v. Serko, 170 Wn.2d 581, 588-89, 243 P.3d 919 (2010) (citing RCW 7.16.160). Petitioners bear "the 'demanding' burden of proving all three elements justifying mandamus." Eugster v. City of Spokane, 118 Wn. App. 383, 403, 76 P.3d 741 (2003) (quoting Mallard v. U.S. Dist. Court of Iowa, 490 U.S. 296, 309 (1989)).

King County contends this court should affirm the dismissal of Zimmerman's mandamus petition because it would otherwise fail on the merits. [9]

---

[9] Neither King County nor the City briefed the lower court on the merits of the mandamus. "As a general rule, appellate courts will not consider issues raised for the first time on appeal." State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). However, as all parties had the opportunity to brief this issue to this court and did so, we exercise our discretion to address the merits of the petition for a writ.

Specifically, King County argues on appeal that DPH had no duty to file the VAERS report at the time of Zimmerman's petition and that Zimmerman had "plain, speedy, and adequate remedies" in the ordinary course of law.[10]

The determination of whether a statute specifies a duty that the person must perform is a question of law. River Park Square, L.L.C. v. Miggins, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001). King County argues that it was under no duty to act because the "Janssen Emergency Use Authorization" was revoked nine months before Zimmerman filed her petition. See Revocation of Emergency Use of a Biological Product During the COVID-19 Pandemic; Availability, 89 Fed. Reg. 83021 (Oct. 15, 2024) (revocation of Janssen Emergency Use Authorization effective June 1, 2023). Generally, "[t]he duty to be enforced by mandamus must be one which exists at the time when the application for the writ is made." State ex rel. Hamilton v. Cohn, 1 Wn.2d 54, 58-59, 95 P.2d 38 (1939). Thus, courts have refused to issue writs "in anticipation of a failure to discharge a duty." See Freeman v. Gregoire, 171 Wn.2d 316, 333, 256 P.3d 264 (2011) (holding that petitioners failed to identify a present duty to transfer I-90 center lanes to Sound Transit for light rail use, so petition for a writ was premature); Walker v. Munro, 124 Wn.2d 402, 409, 879 P.2d 920 (1994) (court refused to issue writ prohibiting

---

[10] King County does not suggest it is impossible for it to submit a VAERS report now; rather, it argues that Zimmerman already filed her own VAERS report, and, thus, she "had already capitalized on plain and adequate remedies" and failed to explain "why this independent self-reporting would be considered less 'official' for the purpose of securing disability benefits." But in its briefing to this court, King County acknowledges that there is not a developed record on the facts of Zimmerman's access to remedies and that appellate courts "should remand to the trial court for fact finding if the record is not fully developed on that issue." King County quoting Dalton M, LLC v. N. Cascade Tr. Servs., Inc., 2 Wn.3d 36, 54, 534 P.3d 339 (2023)). Indeed, "[t]his court generally cannot make findings of fact and will not endeavor to do so based on an incomplete record." Garcia v. Henley, 190 Wn.2d 539, 544, 415 P.3d 241 (2018).

secretary of state and legislature from implementing and enforcing an initiative that had not yet gone into effect because such duties "are not yet being performed, nor are they capable of performance, until the effective dates of the provisions.").

The parties do not provide authority addressing whether a past duty to report an adverse reaction from a past vaccination continues as a present duty owed to the individual with regard to that event, even if changes in the law removed that obligation for later vaccinations. In support of its argument that it had no duty to act, King County cites Colvin v. Inslee, 195 Wn.2d 879, 467 P.3d 953 (2020); but Colvin does not address whether a past duty to report can continue as a present duty, even if the law has subsequently changed. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Accordingly, we reject King County's argument.

Nevertheless, Zimmerman also has not identified sufficient law to establish a duty to act. In her fifth claim for relief, Zimmerman alleges as follows regarding the issue of duty:

> Respondents have a duty to comply with the requirements of the Secretary's declarations and the FDA, HHS, and CDC and other mandatory public health guidelines and directives in administering, dispensing, and using the J&J Vaccine, (b) public health guidance from all applicable authorities having jurisdiction over the administration, dispensing, and use of the J&J Vaccine, (c) the applicable federal contracts and agreements related to the administration, dispensing, and use of the J&J Vaccine; and (d) all requirements of all federal and other authorities having jurisdiction applicable to the administration, dispensing, and use of the J&J Vaccine, including without limitation those set forth in:

>     (a) the March 10, 2020 initial declaration for medical
>         countermeasures against COVID–19 (85 FR 15198, Mar. 17,
>         2020) and all subsequent amendments thereto issued by the
>         Secretary of Health and Human Services;
>     (b) 42 U.S.C. § 247d-6e – ["]Covered countermeasure process"
>         which requires that the Health Care Providers administer
>         vaccines consistent with any applicable guidelines of the
>         CDC; and
>     (c) the laws, rules, regulations, and other guidelines of other
>         applicable authorities, public agencies, and their delegates
>         having jurisdiction, responsibility, and authority over the
>         manufacture, distribution, and administration of medical
>         countermeasures in response to the Secretary's Declaration
>         of emergency.

These exceedingly general references are not sufficient to meet Zimmerman's burden to identify a clear duty to act. "A writ of mandamus is a rare and extraordinary remedy because it allows courts to command another branch of government to take a specific action, something the separation of powers typically forbids." Colvin, 195 Wn.2d at 890-91. Accordingly, mandamus is an appropriate remedy only " 'where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.' " SEIU Healthcare 775NW v. Gregoire, 168 Wn.2d 593, 599, 229 P.3d 774 (2010) (emphasis omitted) (quoting State ex rel. Clark v. City of Seattle, 137 Wash. 455, 461, 242 P. 966 (1926)). "[E]ven a mandatory duty is not subject to mandamus unless it is also ministerial, or nondiscretionary, in nature." Id. (rejecting petitioner's argument based on statutory language that the governor "must" include the funding request in her budget proposal). Thus, Zimmerman's reliance on general requirements for reporting of adverse events associated with vaccines—even if various federal laws and implementing

documents use the words "shall" and require certain actions—is insufficient to establish the duty element for a writ of mandamus.[11]

Next, in Zimmerman's reply brief, as an additional source of a duty, she cites a statute not mentioned in her petition—RCW 70.02.100, which addresses correction or amendment of a patient's health care records. Based on RCW 70.02.100, she argues that "Respondents have a duty to accurately and completely record and report [her] serious adverse reaction to the vaccine they used on her" and that they "continue to refuse to perform their duty to correct, amend, record, and report her anaphylactic reaction and disability in her medical records."

Ordinarily we do not consider arguments raised for the first time in reply. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Even if we were to consider her new argument as to the source of the duty, ch. 70.02 RCW allows for civil remedies in the form of a direct action against the health care provider. RCW 70.02.170. Where a cause of action exists, a petitioner has a remedy in the ordinary course of law and a writ is not available. See Walsh v. Hobbs, 3 Wn.3d 914, 921, 557 P.3d 701 (2024) ("mandamus relief is available only if there is no plain, speedy, and adequate remedy in the ordinary course of law"). Thus, Zimmerman cannot establish the second element for a writ, that she lacks a plain, speedy, and adequate remedy in the ordinary course of law.

---

[11] Indeed, King County notes that the only sources of authority that Zimmerman cites for the duties to provide vaccine fact sheet disclosures and report to the VAERS system "do not, by their own terms, mandate VAERS reporting or vaccine fact sheet disclosure."

We conclude Zimmerman's mandamus petition does not state a claim for relief sufficient to withstand a CR 12(b)(6) motion. Accordingly, we affirm the trial court's order dismissing Zimmerman's fifth claim for relief.

## IV. Claims against the City and Mayor Harrell

We affirm the dismissal of claims against the City for the same reasons stated above for the dismissal of the claims against King County: The City enjoys PREP Act immunity for Zimmerman's claims for loss, and Zimmerman fails to satisfy all elements required for a writ of mandamus.

As to now former Mayor Harrell, Zimmerman does not allege any specific actions he took as an individual; she names him in her complaint only insofar as he "is Mayor of the City of Seattle and the chief executive and administrative officer of the City, in charge of . . . the DPH." His inclusion in the lawsuit is solely on the basis of his role over the municipality, consistent with an "official capacity" lawsuit. See Hanson v. Carmona, 1 Wn.3d 362, 375-77, 525 P.3d 940 (2023) (government entities can act only through its employees, and acts within the scope of employment of the government "are the acts of the government entity itself"). "Official capacity" lawsuits are duplicative where the official's office is also named in a lawsuit, because the suit against the official " 'is no different from a suit against the [office] itself.' " Triplett v. Wash. State Dep't of Soc. & Health Servs., 193 Wn. App. 497, 509, 373 P.3d 279 (2016) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). Accordingly, the trial court appropriately dismissed Mayor Harrell as a party.

22

CONCLUSION

We affirm the dismissal of Zimmerman's claims against all Defendants because the PREP Act provides immunity for all claims for loss, and Zimmerman fails to establish the required elements for a writ of mandamus. We further affirm the trial court's separate dismissal of Mayor Harrell as a party because he was sued solely in his official capacity.

_Cheng, J._

WE CONCUR:

_____, ACJ

_____, J.